WALTER H. TOMPKINS v. DAVID MAHONEY.

INSTRUCTIONS TO JURY.—It is not error for the Court to refuse to instruct the jury upon a point in relation to which there is no evidence.

NEW TRIAL.—A new trial will not be granted on account of the giving of instructions to the jury which could not have injured the party complaining.

ADMISSION OF EVIDENCE.—If a complaint in an action to recover money for legal services is general in its language, and the defendant demands and receives a bill of particulars, he cannot object to the admission of evidence under it.

CITATION UPON WRIT OF ERROR, AND UNDERTAKING THEREON.—The Judge of the United States District Court for the District of Oregon has no authority, while holding the Circuit Court of the United States for the District of California, to sign a citation upon a writ of error from the Supreme Court of the United States to the Supreme Court of this State, nor has he authority to take and approve of the security required in order to make the writ of error a supersedeas and operate as a stay of execution upon the judgment to be reviewed.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

The following is a copy of the complaint in this action:

"The plaintiff complains of the defendant, and for cause of action herein alleges, that prior to the commencement of this suit the plaintiff rendered services to the defendant, as the attorney of and for the defendant, upon his retainers, in the prosecution and defense of divers causes, suits, and business of and for the defendant, and in counselling and advising him, at his request, and for divers journeys and other attendances in and about the business of the defendant, at his request. And this plaintiff further alleges that the said services were reasonably worth the sum of thirty thousand dollars, which sum the defendant undertook and promised to pay, and the same is still due and unpaid, and due demand thereof was made by the plaintiff of the defendant. Wherefore plaintiff prays judgment against said defendant for said sum of thirty thousand dollars, with interest thereon from the time of the commencement of this suit, and for his costs herein."

The defendant objected to any evidence being received in the action, for the reason that the complaint did not state facts sufficient to constitute a cause of action. The Court over-

ruled the objection.   The plaintiff recovered judgment, and the defendant appealed.

The other facts are stated in the opinion of the Court.

*John B. Felton,* and *Theodore H. Hittell,* for Appellant.

*Hall McAllister,* for Respondent.

By the Court, SAWYER, J.:

This is an action to recover the value of professional services rendered by plaintiff as an attorney at law to defendant. The Court refused to give to the jury the following instruction asked by defendant : "If the jury find that there was a mutual understanding between plaintiff and defendant that only in the event of recovering to the extent of the exterior boundaries, and finally securing those outside lands, the plaintiff was to receive as his compensation a portion of the profits, either in land or its worth, from the plaintiff, then plaintiff would not be entitled to recover in this suit fees for that service in event of failure so to recover the lands."   The Court, at request of plaintiff, stated substantially to the jury that such an agreement as referred to in the said instruction refused was void under the Statute of Frauds unless in writing, and added : "But if you find there was such an agreement in writing, then the plaintiff cannot recover in this action for such services unless its terms have been performed, abrogated or modified."   The refusal of the defendant's instruction, and the charge to the jury that such an agreement would be void under the Statute of Frauds unless in writing, are the rulings principally relied on to reverse the judgment.   We shall not discuss the question whether there would have been error in the action of the Court had the evidence been different; for we think the respondent clearly right in the position, that there is no evidence in the record requiring any instruction at all on the point.   It affirmatively appears that the record contains all the evidence on the point, and there is no evidence which would justify a jury under any circumstances in finding

a contract, either verbal or written, of the character referred to in the instructions refused and given, to which the exceptions relied on relate. The plaintiff and defendant both testified as witnesses on their own behalf. The plaintiff expressly denies any such contract. The defendant, at the close of his testimony in chief, says: "At a meeting in Sharp's office, where Sharp, Tompkins, Bergen and myself were present, Sharp demanded that I should make deeds to himself, Tompkins and Bergen of interests in the ranch, claiming that it was to be within the half league. I refused, and told them I was not to give anything within the half league. After we went out, Tompkins told me I did right." He certainly did not state or intimate any contract of the kind in this. He merely states a demand of Sharp, in the presence of Tompkins, and his own refusal, and that after Sharp left, Tompkins said he did right. But upon what grounds Tompkins said he did right, or what objects he and Mahoney had in view at the time, does not appear. There is certainly nothing here inconsistent with Tompkins' testimony.

On cross examination by plaintiff's counsel, the defendant testified as follows :

" I want to know what evidence has Tompkins, or any person, of his having a future interest in this rancho ?"

" He has got no interest in this rancho except an implied verbal understanding with him that he should share in it."

" Has Tompkins any paper now to that effect ?"

" No."

" You were quarreling about the matter of fees ?"

" We disagreed about the prices marked on this paper."

" Why were you disagreeing about these figures if he had an interest in this land ?"

" I told him, as I told you, I always had it in my mind that up to the decision and the restitution in case No. 5, I paid him for his services, and I thought he was satisfied, and all outside of that was to be considered as property acquired, and

I was, as I supposed, to get an equal share with him and Sharp."

This is all the testimony of the defendant upon the point. He states no contract with Tompkins, verbal or written. He expressly says there was no written contract. He says, directly, that Tompkins " has got no interest in this rancho, except an implied verbal understanding with him that he should share in it." He would, perhaps, like to have it inferred from this exception that there was some sort of an *implied* understanding, although he seems careful not to say directly that there was. It is not easy to understand what defendant means by " implied verbal understanding," introduced by way of exception. He evidently did not claim that there was any *express* understanding, and there could be no contract of the kind supposed unless it was express.

His last answer merely stated what he had before said to Tompkins while disputing the amount of his charges, and afterwards repeated to his counsel. It affirms nothing as a fact, except that he had so stated before. Now, if there was any contract, verbal or written, upon the subject, Tompkins and Mahoney are the very parties to know it, and Mahoney went upon the stand to testify in his own behalf—to make the very best case in his own favor that the facts within his knowledge would admit of. If he failed to state categorically and directly that there was a contract or understanding upon the subject favorable to himself, or what the contract was, we may safely conclude that there was none. He would not leave a matter so important to his interest to be inferred from hints and vague inuendoes. He did not state any. Bliss also testified that on one occasion Mahoney, in the presence of plaintiff, said " that ' Tompkins was in on the exteriors,' and Tompkins made no reply thereto." This, in connection with the testimony that Tompkins devoted several years to the service of Mahoney in litigation about the rancho, without any express agreement, as to compensation, is the testimony upon which the jury was expected to infer the contract supposed in the instructions. The loose and vague remarks quoted from

Mahoney's testimony and the other slight circumstances appearing, if there was nothing to the contrary in the record, are wholly insufficient to justify an inference that such a contract as claimed existed.

The Court might have safely instructed the jury, that upon the testimony, it was unnecessary for them to consider the question. Except as to the amount, the jury found the only verdict that could properly have been found on the evidence, and if the plaintiff was entitled to recover at all, the instructions given and refused could not affect the amount. The case is clearly within the principle of *Lyle* v. *Rollins*, 25 Cal. 438, and *Carpentier* v. *Gardiner*, 29 Cal. 160, and a finding upon the evidence in this record, that there was a verbal or written contract or understanding between the plaintiff and defendant of the nature indicated in the instructions under consideration, would be set aside as unsupported by the evidence. It could make no possible difference to the defendant, therefore, whether the instructions were given or refused, and he could not have been injured. (*Terry* v. *Sickles*, 13 Cal. 429.)

The evidence is clearly sufficient to justify the jury in finding for the plaintiff to the amount of the value of the services rendered.

The complaint is sufficient to justify the admission of the evidence. It is quite general in its language, but the defendant, as he was entitled to do, demanded and received a bill of particulars.

We find nothing further in the record requiring comment, and nothing to justify a reversal of the judgment.

Judgment and order denying new trial affirmed.

After the decision of this case by the Supreme Court, and before the remittitur had been issued, the Judge of the United States District Court for the District of Oregon, who, by the request of one of the Justices of the Supreme Court of the United States, was holding the Circuit Court of the United States for the District of California, signed a citation upon a writ of error from the Supreme Court of the United States

to the Supreme Court of this State, and approved of the security required in order to make the writ of error a *supersedias,* and operate as a stay of execution upon the judgment. The Clerk, for the reasons above stated, refused to issue the remittitur. Respondent's counsel thereupon moved the Supreme Court for an order that the remittitur issue.

By the Court, SAWYER, J.:

Application for a remittitur. The only question on this application is, whether the Judge of the United States District Court for the District of Oregon, while holding the Circuit Court of the United States for the District of California, upon the request of the Judge of the Supreme Court of the United States assigned to that circuit in pursuance of the Act of Congress, is authorized by the Acts of Congress to sign a citation upon a writ of error from the Supreme Court of the United States to this Court, and to take and approve of the security required in order to make the writ of error a *supersedeas* and operate as a stay of execution upon the judgment to be reviewed. It is conceded that the Judiciary Act of 1789 confers no such authority upon the District Judge, for, by the express terms of the Act, the citation must be "signed by the Chief Justice or Judge or Chancellor of the Court rendering or passing the judgment or decree complained of, or by a Justice of the Supreme Court of the United States." (1 Stat. at Large, U. S., 86, Sec. 25.) And by section twenty-two the security is to be taken by the Justice or Judge signing the citation. But section two of "an Act to provide Circuit Courts for the Districts of California and Oregon and for other purposes," approved March 3, 1863, provides, that, "There shall hereafter be Circuit Courts held for the Districts of the States of California and Oregon by the Chief Justice, or 'one of the Associate Justices of the Supreme Court of the United States assigned or allotted to the circuit to which such districts may respectively belong, and the District Judges of said district, severally and respectively, either of whom shall con-

stitute a quorum, which Circuit Courts and the Judges thereof shall have like powers and exercise like jurisdiction as other Circuit Courts and the Judges thereof" (12 Stat. at Large, U. S., 794); and section one of another Act, approved on the same day, provides "that whenever the Judge of the Supreme Court for any circuit, from disability, absence, the accumulation of business in the Circuit Court in any district within his circuit, or from his having been of counsel or being interested in any case pending in such Circuit Court, or from any other cause, shall deem it advisable that the Circuit Court in such district shall be holden by the Judge of any other circuit, he may request, in writing, the Judge of any other circuit to hold the Circuit Court in such district during a time to be named in such request; and such request shall be entered upon the journal of the Circuit Court so to be holden. And thereupon it shall be lawful for the Judge so requested to hold the Circuit Court in such district and to exercise all the powers of the Judge of such circuit within and for such district during the time named in such request." (Ib. 768, Sec. 1.) And it is claimed that these provisions authorize the District Judge of Oregon, while holding the Circuit Court of the United States for the District of California, upon the request of the Justice of the Supreme Court of the United States allotted to said circuit, or of the Chief Justice, to sign citations and take security upon writs of error from the Supreme Court of the United States to this Court.

The argument is, that a Justice of the Supreme Court of the United States is the Circuit Judge; that a Justice of the Supreme Court is authorized to sign citations under the provisions of the Act of 1789; that the Act of 1863 authorizes the Judge requested to hold the Circuit Court in such district "to exercise all the powers of the Judge of such circuit, within and for such district, during the time named in such request," and as the Justice of the Supreme Court is Judge of the Circuit Court and is authorized to sign citations, the Justice of the District Court, while exercising " all the powers of the Judge of such circuit," must also have power to sign cita-

tions, otherwise he cannot exercise all the powers of the Judge of such circuit. But the vice of the argument consists in confounding the different characters in which the several Judges act. The Circuit and Supreme Courts of the United States are different, distinct and wholly independent Courts, differently organized and exercising different, and in no respect concurrent, jurisdictions. With respect to each other, one is a Court of original, and the other of appellate, jurisdiction. The Supreme Court not only exercises appellate jurisdiction over the judgments of the Circuit Courts, but, in certain cases, over final judgments of the highest State Courts. But neither the Circuit Courts of the United States nor their Judges, as such, have any relations with State Courts. Signing a citation on a writ of error from the Supreme Court of the United States to a State Court is an act pertaining to the exercise of appellate jurisdiction, and the power is therefore very properly conferred upon a Justice of the appellate Court, as such. The Justices of the Supreme Court, under the provisions of the Act of Congress establishing Circuit Courts, are assigned to certain circuits, and are authorized to hold the Circuit Courts. But while so holding Circuit Courts they are acting as Circuit, and not as Supreme Court, Judges, and exercising a jurisdiction entirely different from that which they exercise as Justices of the Supreme Court. They are acting simply as Circuit Judges, under express provisions of the statute relating to those Courts, and making them Circuit Judges. There is no necessary connection between the Circuit Courts and the Justices of the Supreme Court. The whole matter depends upon the provisions of the statute. The former Circuit Court for the Districts of California had a Circuit Judge of its own provided for by law, and was never held or authorized to be held by a Justice of the Supreme Court. Yet it had the same jurisdiction as other Circuit Courts. That person is a Circuit Judge whom the law makes a Circuit Judge, and while acting as Circuit Judge he only exercises those powers which pertain to the Circuit Court and its Judge—to the business of that Court. Under the second section of the first Act of 1863,

before cited, the Justice of the Supreme Court assigned to the circuit embracing the districts of California and Oregon, and the District Judge of the District of California, or *either of them*, are authorized to hold the Circuit Court for said district. They are both, then, when holding the Circuit Court, Judges of that Court. One no more so than the other, under the terms of the Act. We can no more say that the Judge of the Supreme Court is the Circuit Judge of the Circuit Court than that the Judge of the District Court, while holding that Court, is the Circuit Judge for that district; and the Justice of the Supreme Court must have so construed the Act; and further, that the Judge of the District of Oregon was a Judge of another circuit, within the meaning of the Act, or he could not have requested the District Judge of Oregon to hold the Court, under the first section of the Act of 1863, secondly cited, which only authorizes him to " request in writing the Judge of any other *circuit* to hold the Circuit Court in such district." Either the Justice of the Supreme Court or the Judge of the District Court, while holding the Circuit Court, is Judge of the Circuit Court, and exercises the powers only of a Circuit Judge by virtue of the provisions of the statute organizing the Circuit Courts and defining their jurisdiction, and providing who shall act as the Judges of such Court, and not by virtue of those provisions severally organizing and defining the jurisdiction of the Supreme and District Courts and providing Judges for such Courts. While holding the Circuit Court, the Justice of the Supreme Court does not exercise the powers pertaining to the Supreme Court, nor does the District Judge exercise the powers pertaining to the District Court, but each, as Circuit Judge, exercises the powers and jurisdiction pertaining to the Circuit Court and transacts the business only belonging to that Court. If, while holding a Circuit Court, the Justice of the Supreme Court transacts any business at chambers pertaining to the Supreme Court, he does it as Justice of the Supreme Court and not as Judge of the Circuit Court; and the same may be said of the District Judge. If he transacts any business pertaining to the District

Court he does it as District Judge.   We can no more refer to the powers of the Justice of the Supreme Court relating to the business and jurisdiction of the Supreme Court, for the purpose of enlarging the powers of a District Judge while holding a Circuit Court, so as to embrace business with which that Court has no concern, than we can refer to the powers of the District Judge, as such, for the purpose of limiting his powers when holding a Circuit Court.   The provisions of the Acts of Congress under which the power is claimed, in this instance, to have been conferred upon the District Judge of Oregon, relate wholly to the Circuit Courts.   The whole object of the provision was to provide for holding Circuit Courts and for the exercise of Circuit Court jurisdiction.   This was the entire subject matter to be provided for, and the Act must be construed with reference to the object to be accomplished.   It is clearly manifest that no reference was intended to be made to the exercise of appellate jurisdiction over the judgments of State Courts.   In signing a citation of the kind in question, a Justice of the Supreme Court would in no case act as Circuit Judge.   There is no authority given him to sign in that character.   The Justice of the Supreme Court allotted to the Tenth Circuit has no more, and no less, power in the premises than the Chief Justice or any of the Associate Justices of the Supreme Court of the United States.   They, as well as he, get their power from those provisions defining their powers as Justices of the Supreme Court, and not those provisions defining their powers as Circuit Judges.   And it is only the powers which they exercise as Circuit Judges that are conferred on the District Judges when they, also, under similar statutory provisions, act in the capacity of Circuit Judges.   It is clear to our minds that the District Judge of Oregon had no jurisdiction, while holding the Circuit Court for the District of California, to sign the citation or take the security in this case, and that his act is void.   It follows that the citation and security taken do not operate as a *supersedeas* in this case.   (See *Hogan* v. *Ross*, 11 How. 296 ; *Saltmarsh* v. *Tuthill*, 12 How. 389 ; *United States* v. *Curry*, 6 How. 113.)

Points decided.

This is the view taken by Judge Pratt in a lucid opinion recently delivered in the Twelfth Judicial District, in the case of *Donner* v. *Palmer*, and we think it correct.    (1 Pacific Law Magazine, 291.)

Ordered that the remittitur be issued.