STATE ex rel. JOHN UTICK and Others v. BOARD OF COUNTY COMMISSIONERS OF POLK COUNTY.[1]

November 7, 1902.

Nos. 13,087—(11).

**Defective Statutes—Inferences by Court.**

In cases of imperfectly drawn statutes, the court, rather than pronounce them unconstitutional and void, will draw inferences from the evident intent of the legislature, as gathered from the whole statute, supplying by implication technical inaccuracies in expression and obviously unintentional omissions, from the necessity of making them operative and effectual as to specific things which are included in the broad and comprehensive terms and purposes thereof; and such inferences and implications are as much a part of the statute as what is distinctly expressed therein.

**County Drainage Act.**

Laws 1901, c. 258,—an act providing for the drainage of wet and overflowed lands in certain cases,—construed, and *held* a valid, constitutional legislative enactment.

**Petition Jurisdictional.**

A petition in proper form, filed as required by the above statute, is a jurisdictional prerequisite to the authority of the county commissioners

[1] Reported in 92 N. W. 216.

to entertain a proceeding thereunder, but the description of a proposed ditch need not be stated with precise accuracy. It is sufficient that the starting point, course, and terminus be stated with approximate accuracy; the board, in ordering the construction of a ditch under such statute, being finally guided by the description as contained in the surveyor's report.

Writ of certiorari issued from the supreme court to review the proceedings of the Board of County Commissioners of Polk county in laying out a drainage ditch in said county designated as "Ditch No. 23." Writ discharged.

The ditch was described in the petition therefor as follows: "A general description of the proposed starting point, route and terminus of said ditch is as follows: Commencing at a point in the southwest quarter of the southwest quarter of section eight on the northerly shore of a certain lake lying and being in said section eight and section seventeen, town of Queen, Polk county, Minn.; thence running along the following route, to-wit: in a northwesterly direction through sections eight and seven, town of Queen, Polk county, Minn.; thence in a westerly direction through section twelve, town of Brandsvold, Polk county; thence in a northwesterly direction through sections eleven and two in said town of Brandsvold to a certain creek or water course in said section; thence following the course of said creek or water course through sections two, three and four, town of Brandsvold, and sections thirty-four and thirty-three, Town of Hill River, Polk county, to the junction of said creek with the Hill river, and terminating at or about said junction with the Hill river as its outlet."

*Gideon S. Ives* and *Harvey W. Stark,* for relators.

Laws 1901, c. 258, is unconstitutional. The legislature has no power to exercise the right of eminent domain, the police power, or the power of taxation, for private purposes. 2 Kent, Com. *340; Coster v. Tide Water, 18 N. J. Eq. 54; Lewis, Em. Dom. § 157; Lien v. Board of Commrs. of Norman Co., 80 Minn. 58; In re Jacobs, 98 N. Y. 98; In re Theresa Drainage Dist., 90 Wis. 301; Donnelly v. Decker, 58 Wis. 461; Lake Erie v. Commissioners, 63 Oh. St. 23; Hull v. Baird, 73 Iowa, 528; Kinnie v. Bare, 68 Mich. 625.

If there is no declaration by the legislature of the public purpose or use, and no authority delegated to the commissioners to pass upon this question, the act must necessarily be unconstitutional and void. Dillon, Mun. Corp., § 468; Reeves v. Treasurer, 8 Oh. St. 333; Jenal v. Green Island, 12 Neb. 163; State v. Curtis, 86 Wis. 140; Fleming v. Hull, 73 Iowa, 598; In re City of Buffalo, 78 N. Y. 362; Gifford v. Shroer, 145 Ind. 572; Priewe v. Wisconsin, 93 Wis. 534; In re Niagara Falls W. R. Co., 108 N. Y. 375; In re Tuthill, 163 N. Y. 133.

*W. E. Rowe,* County Attorney, and *Hiram F. Stevens,* for respondent.

Only the validity of the act can be considered in this proceeding. All the objections raised by relators, except such as go directly to the validity of the act, could be raised upon the hearing before the commissioners, who are (Sec. 9) to proceed to hear and consider the same and to determine whether or not such damages and benefits have been duly awarded and assessed. Such determination may be reviewed upon appeal, at the instance either of one who has been assessed for benefits, or whose land has been condemned. Nor is the right of appeal limited, in terms, to such persons; but it would seem that, if error has occurred or wrong is liable to be suffered, "any person or corporation aggrieved" may appeal "from any judgment or order determining" either of those matters. The district court, under its ample jurisdiction, has no difficulty in affording relief to any party whose lands have been taken and who has appealed from a decision of the commissioners fixing the amount of his damages in a case where they are without authority to fix them at all. Nearly all of the objections raised by relators could have been urged with equal propriety against the former acts. While some of them provide that the commissioners shall "deem" the work to be of public utility, there is no provision for any investigation, hearing or determination upon that question. The legislature may well have considered that their opinion of what was expedient and proper was paramount to that of any board of county commissioners, or other inferior body. Carpenter v. City of St. Paul, 23 Minn. 232; State v. Board of Public Works,

27 Minn. 442; St. Paul, M. & M. Ry. Co. v. City of Minneapolis, 35 Minn. 141; Hurst v. Town of Martinsburg, 80 Minn. 40; Crossley v. O'Brien, 24 Ind. 325. It is sufficient if the petition shows on its face that the use or purpose is a public one. Sampson v. Kansas, 111 Mo. 237; St. Louis v. Hannibal, 125 Mo. 83. "Unless it is apparent that there was a lack of jurisdiction upon the part of the board of commissioners in respect to the subject matter of the proceeding, which * * * was the establishment and construction of a public ditch, appellant, by virtue of a well-settled rule, must necessarily fail in this collateral attack, no matter how gross an error or irregularity was committed by the board, in locating and establishing, as it did, the particular ditch over and upon the right of way in question. It can only succeed in this action by showing that the order of the board so far as it is thereby affected, is null and void." Baltimore v. Board, 156 Ind. 260. And see Whitacre v. St. Paul & S. C. R. Co., 24 Minn. 211; State v. Board of Public Works, supra; St. Paul, M. & M. Ry. Co. v. City of Minneapolis, supra; Knoblauch v. City of Minneapolis, 56 Minn. 321; Eldridge v. Smith, 34 Vt. 484; Tyler v. Beacher, 44 Vt. 648; McKusick v. City of Stillwater, 44 Minn. 372; Kelly v. Minneapolis City, 57 Minn. 294; Spencer v. Merchant, 125 U. S. 345.

The act is constitutional. All authorities agree that the exercise by the legislature of the right of eminent domain is restricted by only two conditions: (1) That compensation shall be made to the owner of the property taken; and (2) that the use for which property may be taken shall be a public use. In other respects it is without limit. The legislature alone must determine whether the purpose to be subserved is necessary or wise, and when and under what circumstances the occasion for its exercise arises. The courts may see that the use is public, that compensation is made, and that the legislature has indicated its will that the power should be enforced, but further than that the judiciary is without authority. See State v. Rapp, 39 Minn. 65; Holtz v. Commissioners, 41 Oh. St. 423. See a discussion of the police power in Boston v. County, 79 Me. 386; Thompson v. County of Polk, 38 Minn. 130. The intention of the legislature must be gathered mainly from

the terms of the statute. Talbot v. Hudson, 16 Gray, 417. The mode of exercising the right of eminent domain, whether by the state itself or its delegates, rests in the discretion of the legislature, in so far as the legislature is not restrained by the constitution. Wilkin v. First Div. St. P. & P. R. Co., 16 Minn. 244 (271); Hursh v. First Div. St. P. & P. R. Co., 17 Minn. 417 (439); Weir v. St. Paul, S. & T. F. R. Co., 18 Minn. 139 (155); Warren v. First Div. St. P. & P. R Co., 21 Minn. 424; Cotton v. Mississippi & R. R. Boom Co., 22 Minn. 372; Commrs. of State Park v. Henry, 38 Minn. 266. The presumption is that the commissioners proceeded rightly and according to the statute until the contrary appears. Abel v. City of Minneapolis, 68 Minn. 89; Lewis, Em. Dom. § 242, et seq; Curran v. Board of Co. Commrs. of Sibley Co., 56 Minn. 432; Chicago, B. & N. R. Co. v. Porter, 43 Minn. 527. See State v. Rapp, supra; City of St. Paul v. Nickl, 42 Minn. 262; Fairchild v. City of St. Paul, 46 Minn. 540; Knoblauch v. City of Minneapolis, supra; Sperry v. Flygare, 80 Minn. 325; Lien v. Board of Commrs. of Norman Co., 80 Minn. 58; Lewis, Em. Dom. §§ 10, 237, 246, 393, and cases cited; 10 Am. & Eng. Enc. (2d Ed.) 1070, et seq. It is for the legislature to judge the degree of public necessity and to what extent, on what occasion and under what circumstances the power of eminent domain shall be exercised, and the courts cannot control the decision of the legislature on these points; but, whether the use is public or private is for the judiciary. Hartwell v. Armstrong, 19 Barb. 166; In re B. H. F & W. Ry. Co., 79 N. Y. 64; In re N. F. & W. R. Co., 108 N. Y. 375; Pocantico v. Bird, 130 N. Y. 249; In re Burns, 155 N. Y. 23.

Drainage is prima facie a public use, as matter of law. Fallbrook Irrigation District v. Bradley, 164 U. S. 112; Secombe v. Railroad Co., 23 Wall. 108; Kohl v. U. S., 91 U. S. 367; Wurts v. Hoagland, 114 U. S. 606; Sweet v. Rechel, 159 U. S. 380; U. S. v. Gettysburg, E. Ry. Co., 160 U. S. 668; In re Rhode Island, 22 R. I. 455; Duke v. O'Bryan, 100 Ky. 710; Head v. Amoskeag Mnfg. Co., 113 U. S. 9; Miller v. Troost, 14 Minn. 282 (365). This court has also expressly and specifically recognized drainage as a proper and even typical application of the doctrine, when the object is a

public purpose. (And by the terms of section 6 of this act, there can be no assessment for any but a "public ditch.") See Dowlan v. County of Sibley, 36 Minn. 430, 432, last line; Sperry v. Flygare, supra; Lien v. Board of Co. Commrs. of Norman Co., supra; McGee v. Board of Co. Commrs. of Hennepin Co., 84 Minn. 472. See also note to Beekman v. Saratoga (3 Paige Ch. 45), 22 Am. Dec. 679; note to Tide Water v. Coster (3 C. E. Green, 518), 90 Am. Dec. 634; Lewis, Em. Dom. 185, et seq.; Tiedeman, St. & Fed. Cont., § 154; Randolph, Em. Dom. 427, 10 Am. & Eng. Enc. (2d Ed.) 1082; Stewart v. Great Northern Ry. Co., 65 Minn. 515.

The proceedings are not void for uncertainty of description, denial of right of appeal, or otherwise. Due process of law is afforded. In State v. District Court of Hennepin Co., 35 Minn. 461, it was held that a petitioner would not be confined to the precise location mentioned in the petition, but the same might be changed or modified so as to effect the purposes of the petitioner, and at the same time do the least injury to others. That the identity of purpose of the easement petitioned for and that prescribed was thus made sufficient. Towns v. Klamath, 33 Ore. 225; In re Road in Sterrett Township, 114 Pa. St. 627. The word "necessary" does not mean absolutely necessary, but expedient, reasonably convenient, or useful to the public. Aurora v. Harvey, 178 Ill. 477. See also Coates v. Mayor, 7 Cow. 585, 606; State v. Mayor, 54 N. J. L. 62; Town v. Denton, 70 N. Y. Supp. 837. In Kinnie v. Bare, 68 Mich. 625, it was held that it was not necessary that the primary petition for the construction of a drain should state that it is necessary for the public health, or highways, or that it is a public necessity, because that is not required by the statute; and, further, that it need not contain an accurate description of the termini and route for the proposed drain. See also Hursh v. First Div. St. P. & P. Ry. Co., supra; Ames v. Lake Superior & M. R. Co., 21 Minn. 372; Cotton v. Mississippi & R. R. Boom Co., 22 Minn. 372; State v. District Court of Hennepin Co., 35 Minn. 461; Commrs. of State Park v. Henry, supra; Tiedeman, St. & Fed. Cont., § 154, et seq., and cases cited.

There is no constitutional right of appeal. In City of Minne-

apolis v. Wilkin, 30 Minn. 140, which was a proceeding to acquire land for a park, provisions quite similar to those here in question were involved; but, in that case, the statute denied the land owner the right of appeal to the supreme court. The court say "Independently of any express constitutional guaranty, a person has no constitutional right to have his case reviewed on appeal. The right of appeal is purely statutory and does not exist when not given by statute." "Indeed it has been held that an existing right of appeal may be taken away by repeal of the statute, even as to causes previously appealed." Ex parte McCardle, 7 Wall. 506. "To deny a party a right to appeal, is not in conflict with section 2, article 6, of the constitution of this state, at least, where as in this case, the right of review on a writ of certiorari exists." Tierney v. Dodge, 9 Minn. 153 (166). See also Weir v. St. Paul, S. & T. F. R. Co., 18 Minn. 139 (155); State v. Board of Public Works, 27 Minn. 442; Commrs. of State Park v. Henry, supra; State v. Rapp, 39 Minn. 65; City of St. Paul v. Nickl, 42 Minn. 262; Kelly v. Minneapolis City, 57 Minn. 294; 2 Dillon, Mun. Corp. (4th Ed.) 600.

BROWN, J.

Certiorari to the board of county commissioners of Polk county to review the proceedings had by them in the matter of laying out a ditch or drain under and pursuant to the provisions of Laws 1901, c. 258.

It appears from the record before us that a petition in due form, dated September 18, 1901, signed by persons whose lands would be affected by the proposed ditch, was filed in the office of the county auditor of Polk county, praying for the construction of a ditch or drain which was described therein, and extended for a distance of several miles. The petition was in all respects in compliance with the statute, and, in terms, represented to the board of commissioners "that the public health, convenience, and welfare" would be promoted by the establishment of the proposed ditch. Whereupon, and after due notice given as required by the statute, the board of commissioners convened in special session, heard and considered the petition, and caused the appointment of a civil engineer to make a survey of the route of the ditch, and to report

the same to the board for its further action. The survey was duly made and reported, whereupon the commissioners, as provided by the statute, made an order appointing viewers, who duly examined the proposed improvements, and reported the result thereof, and the commissioners formally made an order that the ditch be constructed. The final order recites all the facts essential to authorize the same to be made, viz., the filing of the petition, notice of hearing thereon, the appointment of a civil engineer and viewers, their report that the estimated benefits to be derived from the ditch were greater than its cost, including damages awarded, and, further, that, in the opinion of the board, the construction of the ditch "will be of public utility, and conducive to public health and public benefit and convenience."

Upon the making and filing of the order, relators sued out this writ, upon the theory and contention that the act of the legislature referred to, and under which the proceedings in question were conducted, is unconstitutional and void, because it provides for the taking of private property of individuals for a private purpose, and, further, that the description of the proposed ditch, as contained in the petition therefor, is so indefinite and uncertain as to confer no jurisdiction upon the commissioners, if the statute be held constitutional. The main question in the case is the constitutionality of the statute, and we proceed at once to its consideration.

Section 1 of the act vests in the board of county commissioners authority, and makes it their duty, to construct any ditch, drain, or water course, when they find to exist the conditions specified in section 2. Section 2 provides and requires that the petition praying for the establishment of the ditch must set forth, among other things, the necessity for it, its general course and distance, and the lands through which it will pass. It further provides for the appointment of a civil engineer by the board to make a survey of the proposed ditch, and that such engineer shall take and subscribe an oath for the faithful performance of his duties. Upon the filing of his report the board is required by section 5 to appoint viewers, who are also required to take and subscribe an oath of

office, and whose duties are to examine into the merits of the contemplated improvement, and to estimate and report the damages and benefits to each tract of land through or adjacent to which the ditch may pass. Upon their report being made and filed, and after due notice of hearing is given, the board is required to hear and determine the matter. Other sections provide in detail the necessary steps to be taken in carrying out its objects and purposes. Section 6 expressly limits the levying of assessments to the construction of public ditches.

There is no express provision in the statute making it the duty of the board to find whether the proposed ditch will be a public benefit, nor is there any express declaration in the act itself that such fact must exist before a ditch may be ordered constructed; and it is argued from this that the act was not intended by the legislature for the public welfare, but, on the contrary, to authorize the construction of ditches for purely private purposes to enhance the value of individual farms. If this be the true interpretation or construction of the act, it must be held unconstitutional and void; for the legislature has no power to authorize the taking of private property for a private use, nor to compel the payment of assessments for the construction or erection of any public improvement, if such improvement furthers private interests only. It may be observed, further, in reference to the terms and provisions of the act, that ample notice is given and opportunity afforded all interested parties to appear and be heard at every step in the proceedings. An appeal is provided upon the question of damages and benefits, and from an order refusing to lay out the ditch, though none is provided from an order directing its construction.

The question as to the propriety and necessity of legislation such as that here under consideration, if it only authorizes the taking of private property for public use, is one exclusively for legislative cognizance, and with the exercise of its judgment in that behalf the courts have no power to interfere; and in respect to whether a statute providing a general system for draining wet and overflowed lands of the state is a public necessity, and the interests and

welfare of the people demand it, the courts are not concerned. But the question whether a particular improvement under such a statute will inure to the public health, convenience, or welfare is a judicial one, which the legislature cannot determine to the exclusion of the courts. Such statutes usually submit that question to local tribunals in express terms, but no such provision, in express language, is found in the act under consideration.

Two main contentions are made against the constitutionality of this act: First, that it does not expressly and in so many words declare that the public health, convenience, and welfare are intended to be subserved and promoted; and, second, that no provision is made for the determination of that question by the county commissioners.

The act is entitled to a fair and reasonable construction, and one that will voice and give effect to the intention of the legislature. As remarked in the case of State v. Chicago, M. & St. P. Ry. Co., 38 Minn. 281, 37 N. W. 782: "Legislative enactments are not to be defeated on account of mistakes, omissions, or inaccuracies of language, any more than other writings, provided the intention of the legislature can be ascertained from the whole act. In construing a statute, we must assume, if its language will admit, that the legislature intended to act within its constitutional power. We must also, if possible, so construe the language as to make it effectual." The rule thus laid down is one of general application, followed and applied by all courts. Sutherland, St. Const. § 234, et seq.

It is urged by relators that from the fact that all prior statutes of this character in terms expressly declared that a proposed improvement might be ordered by the authorities when the public health, convenience, or welfare would be promoted thereby, and from the further fact that the court, in Lien v. Board of Commrs. of Norman Co., 80 Minn. 58, 82 N. W. 1094, held, in construing the general statutes on the subject of drainage, that such statutes can only be sustained when enacted in the interests of the public welfare, the omission of this provision from the act under consideration shows an intent on the part of the legis-

lature to depart from that rule. It has always been the law in this state that private property may not be taken for a private use, though by the constitution the legislature may authorize it to be taken for a public use upon just compensation being first paid or secured; and it should undoubtedly appear, either from the express language of the statute authorizing such an appropriation, or from a fair and reasonable interpretation of the whole enactment, that the interests of the public health, convenience, or welfare are intended to be promoted. We are bound to assume, as held in the case just cited, that the legislature intended to keep within constitutional limits in the passage of this act, and this presumption cannot be rebutted except by the clearest and most persuasive language showing to the contrary. We are not authorized to indulge in the presumption that the legislature wilfully intended by the passage of this act to depart from the settled law of the land. Robinson's Case, 131 Mass. 376. The inferences are to the contrary, and in favor of an intention on the part of the lawmakers to keep within constitutional limits. This is elementary. Black, Interp. Laws, 87.

That the drainage of large tracts of wet and overflowed lands will operate beneficially to the public, there can be no serious doubt. Statutes authorizing and providing for such drains have been enacted and in force in this country for over a century, and have been sustained on various grounds. Some have been upheld where large tracts of agricultural lands have been reclaimed and made suitable for cultivation, independent of any effect the drainage of such lands might have upon the public health; it being held in those cases that draining considerable portions of the public domain, and benefiting all lands through which the drain may pass, and others adjacent, perhaps, is a public benefit, within the meaning of the law. While the element of public health is often made an important factor in the consideration of statutes of this kind, it is believed that any public benefit, such as the improvement of highways, or the reclamation of large tracts of otherwise waste lands, is sufficient to support and sustain them. Cases on this subject are Coomes v. Burt, 22 Pick. 422; Wright v. City, 9 Cush.

233; Lowell v. City, 111 Mass. 454; French v. Kirkland, 1 Paige, 117; People v. City, 4 N. Y. 419, 438; O'Reiley v. Kankakee, 32 Ind. 169; Ohio v. Commissioners, 41 Oh. St. 423; In re Drainage of Lands, 35 N. J. L. 497; Wurts v. Hoagland, 114 U. S. 606, 5 Sup. Ct. 1086; Head v. Amoskeag Mnfg. Co., 113 U. S. 20, 5 Sup. Ct 441; 10 Am. & Eng. Enc. (2d Ed.) 226; 1 Lewis, Em. Dom. (2d Ed.) § 188.

The same doctrine is applied to the interpretation of statutes providing for the condemnation of private property for the construction of ditches through which to conduct water for the purpose of irrigating arid lands, and thus adapt them to agricultural purposes. Long, Irr. §§ 35–62, and cases cited; 10 Am. & Eng. Enc. (2d Ed.) 1084.

We are required to take judicial notice of the topography of all sections of the state, and, by doing so, find that the so-called Red River Valley, comprising, for the most part, Clay, Norman, Polk, Red Lake, Marshall, and Kittson counties, is flat, level prairie, and, for the want of natural drainage, is wet and swampy during the greater portion of each year; and, in the absence of artificial drainage, large tracts of land therein are wholly unfit and unsuited for agricultural or other purposes, but, when properly drained, are most valuable and productive. There are undoubtedly other portions of the state where similar conditions exist in a lesser degree, but we refer to the Red River Valley section as the most conspicuous and prominent. Clearly, the reclamation of these lands by a system of drainage will inure to the public good, not only by rendering them suitable for agricultural purposes, but will also very naturally benefit the public health.

There can be no doubt as to the constitutionality of statutes enacted for that purpose. Counsel do not contend to the contrary. Their contention is that the act under consideration was not designed or intended for the public health, convenience, or welfare, but to enable private parties to further private interests at the expense of their neighbors. This contention is based upon what we believe to be a too strict construction of the statute. It is true that there is no express declaration therein that it was enacted in the interests of the public welfare, but this omission is not neces-

sarily fatal to its validity. The statute must be construed in the light of all its provisions, and in harmony with pre-existing legislation on the subject. Black, Interp. Laws, 62.

Statutes are seldom drawn with minute particularity, and unintentional omissions and apparent oversights are supplied by implication and intendment by the courts. In cases of imperfectly drawn statutes, the courts, rather than pronounce them unconstitutional and void, will draw inferences from the evident intent of the legislature, as gathered from the law taken as a whole, supplying technical inaccuracies in expression, and obviously unintentional mistakes and omissions by implication, from the necessity of making them operative and effectual as to specific things which are included in the broad and comprehensive terms and purposes of the law; and these inferences and implications are as much a part of the law as what is distinctly expressed therein. People v. Budd, 117 N. Y. 1, 13, 22 N. E. 670, 682; Sherman v. Buick, 32 Cal. 234, 241; Sutherland, St. Const. §§ 334–337.

In Winters v. City of Duluth, 82 Minn. 127, 84 N. W. 788, the court said: "Statutes must be so construed as to give effect to the evident legislative intent, even if the result seems contrary to rules of construction and the strict letter of the statute."

In Talbot v. Hudson, 82 Mass. 417, the court had under consideration a statute similar to that here involved, in which there was the same omission to declare the public purpose of the act; but the court construed it to be in the interests of the public welfare, from a consideration of the provisions of the entire act. The whole act was taken together, and held to have been enacted for the public good. The opinion in that case is an instructive one, and worthy of a careful reading. Authorities in this line might be multiplied, but it is unnecessary.

From a very careful and painstaking examination of this act, we are satisfied that but one construction should, within these rules, be given it, and that to the effect that the legislature intended to provide exclusively for the public welfare. It provides that the county commissioners may construct a ditch or drain when they find the necessity therefor, and that the other provisions of

the act have been complied with. It provides that the petition shall state the necessity for the ditch, and this must necessarily refer to and mean the public necessity, for only public ditches are authorized to be laid out by the act. No assessments upon lands benefited can be made, except toward the payment of a public ditch; and the theory that a private ditch may be ordered constructed under its provisions is impliedly negatived by almost every section of the statute. Section 31 was undoubtedly embodied therein for the very purpose of indicating that the legislature intended it to apply exclusively to cases where the public health, convenience, or welfare will be advanced. This section provides:

"This act shall be liberally construed, so as to promote the public health and the drainage and reclamation of wet or overflowed lands."

It was not in the power of the legislature to provide for a drainage system in the interests of individuals for private advantage and gain, and we are bound to assume that the legislature had that legal proposition in mind in enacting this statute. It is not important that proceedings under the statute are commenced on petition by one or more private citizens; nor is it controlling, by any means, that private interests are advanced and promoted; nor need any considerable portion of the community be directly benefited by the proposed improvement. Lien v. Board of Co. Commrs. of Norman Co., supra; Talbot v. Hudson, 82 Mass. 417; 10 Am. & Eng. Enc. (2d Ed.) 1063; Chicago, B. & N. R. Co. v. Porter, 43 Minn. 527, 46 N. W. 75. The proceedings are conducted by public officials of the county, who are under oath to perform their duties impartially. The ditch, when constructed, is not turned over to, or placed under the control of, individuals, but remains in the charge of the public authorities. The township supervisors are expressly required by the terms of the act to keep them in repair and free from obstructions, and it is made a misdemeanor for any person or persons in any way to obstruct or damage the same. This shows with reasonable certainty that the legislature had in mind the public welfare, rather than private interests.

Reading it strictly, it is possible that the literal language of the

statute may permit of a construction such as contended for by relators; but the rule applied in Stewart v. Great Northern Ry. Co., 65 Minn. 515, 68 N. W. 208, should be applied. The court there construed the general statutes authorizing elevator companies to condemn an elevator site upon the right of way of any railway company, and it was strenuously contended that the statute under which proceedings there were instituted permitted the condemnation of such a site for a purely private use and purpose. The court, in disposing of the contention, said (and the remark is pertinent to the case at bar), "Where one construction of a statute will make it void for conflict with the constitution, and another would render it valid, the latter, if not a forced and unreasonable one, will be adopted, although the former, at first view, is otherwise the more natural interpretation of the language used." To hold that the legislature intended by the enactment of the statute under consideration to further public interests is not a forced or unreasonable construction of the law, though, at first view, a contrary intent might seem its more natural interpretation. As said, in substance, in Curryer v. Merrill, 25 Minn. 1, as a sequence it logically follows that every statute duly passed by the legislature is presumably valid, and this presumption is conclusive unless it affirmatively appears to be in conflict with some provision of the constitution; and, in order to justify a court in pronouncing it invalid, its repugnancy with the constitution "must be so clear, plain, and palpable as to leave no reasonable doubt or hesitation upon the judicial mind."

It is further claimed in support of the contention that the law is unconstitutional that no provision is made therein for the determination by the board of county commissioners, or otherwise, of the question whether a proposed improvement thereunder will result beneficially to the public. As we have already noted, the question as to the propriety, wisdom, and public necessity of statutes of this kind is one exclusively for the legislature to determine; but the question whether a particular improvement under such a statute will promote the public health, convenience, or welfare is one of law, which is beyond the power of the legislature to

determine to the exclusion of the courts. And if it be essential to the validity of any such statute that provision be made for the determination of that question, we have to determine whether this act makes such provision, and casts that duty upon the board of county commissioners. We are of opinion that, fairly construed, and invoking the rule as to implications and intendments in the construction of statutes, the board of commissioners is required to pass upon that question before final action is taken.

The statute provides for filing with the county auditor a petition for the location of a proposed ditch, upon the filing of which that official is required to give notice, by publishing and posting the same, to all interested parties, of a time and place "of the hearing to be had thereon." At the hearing the board must determine whether to entertain the petition. If entertained, they are required to appoint a civil engineer, whose duty it is to make a survey of the proposed ditch, reporting the same to the board. Whereupon viewers are to be appointed, who, in turn, examine the route of the proposed ditch, estimate the damages and benefits to accrue from its construction, and report the same to the board. After all these preliminary steps are taken, a second notice of hearing is provided for, giving therein a time and place of hearing upon the petition, at which, the statute provides, the board shall "proceed to hear and consider the same, and all persons interested may appear and be heard by and before them."

It will be observed that two hearings are required to be had,— one at the time of filing the petition, and one following the report of the viewers; and the question presented is whether it is the duty of the board to determine at either that the proposed ditch, if constructed, will promote the public interests. All parties interested are thus afforded an opportunity to appear and be heard; and manifestly the hearing must be had on all questions pertinent to the pending proceedings, and particularly the controlling question whether the relief prayed for may, under the constitution and laws of the state, be granted. If this were not so, and the legislature did not contemplate such a hearing, then the provision for the notice of time and place thereof becomes practically inoperative

and meaningless.  Clearly the lawmakers could not have been so careful in respect to requiring these notices merely for the purpose of enabling interested parties to appear and raise objections going merely to the regularity of the proceedings, for the regularity of the steps taken is of no very great importance.  The notice to interested parties, affording them an opportunity to be heard on the merits of the proceedings, is the important step.  The legislature had no authority to authorize the construction of a ditch, except for public purposes; the commissioners have no power to order one constructed for a private purpose; and the question whether a proposed ditch may be constructed at all depends primarily upon whether it will result in a public benefit.  To authorize proceedings under the statute, therefore, that question must be determined either at the preliminary hearing upon the petition, or at the second or final hearing.  While the statute does not, in express terms, require the board to determine it, the existence of the fact being essential to their authority to proceed in any case, and essential to the validity of the statute, too, the power to determine it must be implied.

It is stated as a general rule in Black, Interp. Laws, 62, that every statute is understood to contain, by implication, if not by its express terms, all such provisions as may be necessary to effectuate its object and purpose, or to make effective the rights, powers, privileges, or jurisdiction which it grants, and also all such collateral and subsidiary consequences as may be fairly and logically inferred from its terms.  An application of this rule is illustrated by the case of Woodruff v. Town of Glendale, 26 Minn. 78, 1 N. W. 581, where the court construed Laws 1873, c. 5, providing for the laying out of public highways.  That statute authorized the town board of supervisors to open and lay out highways, upon certain provisions of the statute being complied with, and provided for the assessment of damages, but nowhere provided for the payment of the same.  In speaking of this omission, the court said: "The only point made is that the act is unconstitutional, because it does not provide for payment of the damages assessed.  If no such provision were found in the act, of course it would be unconstitutional.

There is no express provision to that effect. But rather than hold the law to be void, the court will find such provision by implication, if the act will admit of such a construction." In the case of Paulsen v. Portland, 149 U. S. 30, 13 Sup. Ct. 750, the court had under consideration the validity of certain ordinances of the city of Portland authorizing the construction of drains and sewers, and the assessment of private property to defray the expense thereof. The ordinances failed to provide for notice to interested parties, and it was insisted that they were unconstitutional and void, as a taking of private property without due process of law. The court held that if notice was in fact given to all interested parties, though the ordinance did not require it in express terms, there was no violation of the constitution, and the proceedings in laying out the sewers were sustained. In the case at bar the petition for the proposed ditch distinctly alleged that its construction would benefit the public health, convenience, and welfare; and the commissioners found the same fact in their final order, thus showing the construction the officials placed upon the statute. They understood that they could proceed only where a proposed ditch would be of public utility, and they found the fact in the final order accordingly. Of course, their construction of the statute is not final or of any particular force, but that they determined the essential question conferring upon them the right to construct the ditch brings the case within the Oregon case just cited.

It is further urged that no appeal is allowed from an order directing the construction of a ditch. This is not essential to the validity of the statute. In cases where no appeal is provided, the matter being discretionary with the legislature, certiorari or other proper remedy is open to injured parties to review the proceedings. The question of public use being a judicial one, interested parties may bring it before the court at any time, upon its appearing that the commissioners contemplate the construction of a ditch in the furtherance of private interests. Just what the precise remedy would be in such a case, we are not called upon to determine at this time. In all probability, an action would lie to restrain further proceedings on the part of the board, if the result thereof

would be a taking of private property for a private use; and the question whether the ditch proposed to be constructed would promote the public health, convenience, and welfare could thus be directly presented to the courts for determination, and would not be open to the objection that the judgment or determination of the commissioners was being attacked in a collateral proceeding. Scudder v. Jones, 134 Ind. 547, 32 N. E. 221; 7 Enc. Pl. & Pr. 222. Such an action was sustained in Northwestern Tel. Exch. Co. v. City of Minneapolis, 81 Minn. 140, 83 N. W. 527, 86 N. W. 69, where the relief sought was to restrain the municipal authorities from the exercise of the police power,—far broader and more comprehensive than an exercise of the power of eminent domain,—on the ground that its threatened exercise was arbitrary and unnecessary.

Upon both these propositions, in view of the importance of the case, the fact that the law has been in operation for some time, and, no doubt, many ditches and drains have been ordered constructed thereunder, and large expenses incurred in furtherance of such improvements, and the further fact that the objections to the validity of the statute go to its form, rather than to its substance, we are constrained to hold it valid, and in no way in violation of any provision of the constitution. The result of holding otherwise, and pronouncing the statute unconstitutional, would be to nullify all proceedings had under it, invalidate debts contracted, and wipe the law from the statute books for defects and omissions not going to its substance, or to the general authority of the legislature to enact it, which defects and omissions could be remedied and cured by proper legislation, and when thus cured and remedied the statute would be a valid legislative enactment. The rights of property owners are fully protected under the law; notice and opportunity to be heard are afforded them at every step; and, it being within the general power and authority of the legislature to enact such legislation, we deem it the part of wisdom to supply by application of the liberal rules of statutory construction all formal defects and technical omissions in the expression of the legislative will.

It is further contended that the description of the proposed

ditch, as set forth in the petition, is so indefinite and uncertain as to confer no jurisdiction upon the county commissioners. We do not concur with relators in this contention. The description of the proposed ditch, as contained in the petition, is as follows:

"Commencing at a point in the southwest quarter of the southwest quarter of section eight, on the northerly shore of a certain lake, lying and being in said section eight and section seventeen, town of Queen, Polk county, Minnesota; thence running," etc.

The precise objection made to the description is that it is indefinite and uncertain as to the starting point of the proposed ditch.

A petition in proper form is, no doubt, a prerequisite to the authority of the commissioners to act, but it is not necessary that the same contain an accurate description of the proposed ditch,— either of its starting point or terminus. It is sufficient if the description contained therein be approximately correct. Kinnie v. Bare, 68 Mich. 625, 36 N. W. 672. The precise location of the ditch is determined by the civil engineer, and is to be found in his report; and that this report definitely located that point and the entire course of the ditch, there is no question. Cribbs v. Benedict, 64 Ark. 555, 44 S. W. 707. The petition mentions as the starting point of the ditch a point on the shore of a certain lake in section eight, town of Queen, Polk county. It is a fact of which the court takes notice that congressional townships, when organized, are given a name by the organizing power, and a reference to the town by such name is as definite and certain as though the number of township and range were given. We find nothing in this particular contention, nor in the other points urged by relators, on which to base an order vacating or setting aside the proceedings of the commissioners.

Writ discharged.