LEO GRAMS v. J. C. MURPHY and Others.[1]

January 31, 1908.

Nos. 15,388—(126).

**County Ditch—Loss to Landowner.**

    Landowners, whose lands are included in a drainage district (chapter 258, Laws 1901), are not entitled to recover from the contractor and his bondsmen for the loss of profits arising from failure to complete the ditch within the time specified.

Action in the district court for Sibley county to recover $3,812 damages for failure to construct a certain ditch. The court, Morrison, J., granted defendants' motion for judgment on the pleadings, for the reasons stated in the opinion. From the judgment entered in favor of defendants, plaintiff appealed. Affirmed.

*Albert L. Young,* for appellant.

*W. H. Leeman* and *John J. Fahey,* for respondents.

LEWIS, J.

In September, 1903, the board of county commissioners of Sibley county, acting under the provisions of chapter 258, p. 413, Laws 1901, on the petition of plaintiff and other landowners, ordered the construction of a ditch for the purpose of draining certain lands. A contract for the work was awarded to defendants Murphy & Garrick, who entered into a contract for the performance thereof and executed a bond as provided by the act, with the other respondents as sureties. The work was not completed within the time fixed by the contract, and this action was brought to recover damages alleged to have been occasioned to plaintiff because of failure to complete the ditch within the contract time. The trial court ordered judgment for defendants on the pleadings, on the ground that the complaint did not state facts sufficient to constitute a cause of action, and upon the ground that the action was not brought within the time prescribed by statute.

[1] Reported in 114 N. W. 753.

The complaint alleged that the plaintiff was one of the petitioners for the construction of the ditch, and that he was the owner of about one hundred acres of wet and swampy land, which would have been drained had the ditch been completed; "that the yearly rental value of said wet lands is $200, and that during the years 1905 and 1906 the plaintiff was and has been by reason of the premises damaged and injured in the sum of $400."

Section 13 of the act requires the auditor to enter into the contract in the name of the county, and that the contractor shall execute a bond "with not less than two freehold sureties, payable to the county, and to any person who may show himself aggrieved or injured by any breach thereof, or of the contract for which said bond is given, for not less than double the amount for which the same is sold, to be by said auditor approved, conditioned that the said party will faithfully perform and fulfil his contract and pay all damages which may accrue by reason of the failure to complete the work within the time required in the contract therefor, and otherwise conditioned, as in this act provided."

Section 14 provides what the contract shall contain and specifies: "Every such contract shall embrace the provisions of chapter 354 of the General Laws of 1895, as amended by the provisions of chapter 307, General Laws of 1897, applicable thereto, and shall provide that time shall be of the essence of the contract, and that if there should be any failure to perform the work according to the terms of said contract within the time limited therein originally, or by extension, the contractor shall forfeit and pay to the county a certain sum to be named therein, and which shall be fixed by the county auditor for each day that such failure shall continue. No extension of time shall be granted unless applied for in writing to the auditor, stating to his satisfaction good and sufficient reasons therefor, nor shall any extension affect the right to enforce such forfeiture, if any, as shall occur after the time originally limited and before such extension, or occurring after the limit of the extension, the bond shall expressly provide that the bondsmen shall be liable for all damages resulting from any such failure whether the work be resold or not, and that any person showing himself injured by such failure may maintain an action upon such

bond in his own name, and that such actions may be successive in favor of all persons so injured. Such contractor shall be considered a public officer, and such bond an official bond within the meaning of sections 5951, 5952, 5953 and 5954, General Statutes 1894."

The contract recites that the work be completed on or before January 1, 1905, in the manner set forth in the report of the engineer, and subject to his approval, "and pay as they became due all just claims for all work and labor performed, and all skill and material furnished in the execution of this contract, and save the said county of Sibley harmless from any cost, charge, or expense that may accrue on account of the doing of the work specified in this contract. The said party of the first part further agrees that time shall be of the essence of this contract, and that if there shall be any failure to perform the work herein described, according to the terms of this contract and within the time limit therein and according to the plans and specifications contained in said engineer's report, that he shall forfeit and pay to said county the sum of $10 for each day that such failure shall continue, and that no extension of the time within which to complete said work shall be granted unless applied for in writing to said county auditor, stating to his satisfaction good and sufficient reasons therefor, nor shall any extension affect the right of said party of the second part to enforce such forfeiture."

The bond which was executed in this case was for the sum of $10,-000, double the amount of the bid, and contained the following condition: "Now, therefore, if the said J. C. Murphy and J. M. Garrick shall and will faithfully perform and fulfil his said contract and pay all damages which may accrue by reason of the failure to complete the said job and contract within the time and in the manner required in said contract therefor, then the above obligation to be void; otherwise, to remain in full force and virtue; and that, in case of the failure to construct said work according to the terms of said contract, the bondsmen hereon shall be liable for all damages resulting from such failure, whether the work be resold or not, and that any person showing himself injured by such failure may maintain an action upon this bond in his own name; and that actions herein shall be successive in favor of all persons so injured."

Under this statement of facts the question is whether the contractors and their bondsmen are liable to plaintiff for the rental value of the land which would have accrued to them had the ditch been completed within the specified time? Did the legislature intend that the contractors and their sureties should be liable for such prospective losses to landowners?

If it were clear that this language, "and to any person who may show himself to be aggrieved or injured by any breach thereof," found in section 13, and this, "any person showing himself injured by such failure," in section 14, refers to persons whose lands might be left undrained by a failure to complete the ditch within the time required, then the statute was enacted for their benefit, though strangers to the contract. Eidsvik v. Foley, 99 Minn. 468, 109 N. W. 993. We may concede that ordinarily this element of damages, loss of profits, is recoverable as between the parties to such a contract. It is analogous to loss of the rental where a contractor fails to construct a building within a specified time. In this instance the damages are not so remote as to be incapable of computation, and parties thus affected, though strangers to the contract, may recover, provided the act so specifies. But, unless the plaintiff is expressly declared an aggrieved party, he stands in no different relation than would a tenant having a lease to take effect upon completion of a building, who is inconvenienced or put to some expense by reason of the fact that his landlord's contractor had failed to complete the building within the time specified. In this case the question is, not whether a landowner may be inconvenienced and deprived of certain profits if there is delay in draining his land, but whether it was the intention of the lawmakers to provide this statutory bond for the purpose of compensating him. The fact that plaintiff was a petitioner for the ditch does not distinguish him from those landowners whose lands were to be drained, but who did not sign the petition.

This plaintiff is not entitled to compensation from the fact that his land has been assessed for the benefits to accrue. It does not appear that the lands have been assessed for benefits. If plaintiff is entitled to recover upon this bond, upon the theory that his lands have been assessed for benefits and that he will have to pay such assessments

when the ditch is completed, then the measure of damages is not the rental value of his land during the time the ditch remains incomplete, but his damages would be the use of the money paid on the assessment before he obtained the benefits; and, further, the usual method is open to him to present whatever defense he may have to the assessment. If plaintiff is entitled to recover, then every landowner whose land is likewise affected by the ditch may also recover. Let up suppose that one of such landowners preferred not to have the improvement and thus be saddled with the assessment, and contested the proceedings through the courts; would such course prevent him at the end of the litigation from turning around and suing upon the bond for damages upon the theory that he had been deprived of the use of his land during the time the ditch remained incomplete? Again, if there is a liability for the loss of the use of such land for one year, then where is the limit of the liability?

The position contended for would lead to the utmost confusion and to interminable litigation. Contractors would hesitate to undertake the construction of such ditches, and it would be difficult to secure bondsmen. The amount of the bond required is not adjusted to the amount of damages recoverable by landowners, if plaintiff's theory is correct. For instance, in this case the cost of the construction of the ditch is $5,000, and the bond is limited by statute to $10,000. It does not appear from the complaint what amount of land was supposed to be drained by this project. In some cases it might run into hundreds or thousands of acres, and yet the cost of the ditch be comparatively small. There is no provision in the act for proportioning the damages among the various landowners. The first one who commences an action may exhaust the bond, leaving the others without any compensation. If it was intended to reimburse any, then why not provide for all, or at least permit them to prorate in the fund? All of these matters must have been taken into consideration by the legislature, and in our judgment the language of the act does not necessarily require the construction contended for.

There is no particular reason why owners of land so situated should be recompensed. Theoretically the drainage act is for the benefit of the country through which the ditch is constructed, and its constitu-

tionality was upheld on that ground. Utick v. Board of Co. Commrs. of Polk County, 87 Minn. 325, 92 N. W. 216, 60 L. R. A. 161. It is in the interest of public health, removes a public nuisance, marshy and undrained land, and it is of profit to the community to have wet lands made more productive than they otherwise would be. The profits accruing to landowners are incidental. The general purpose and scope of the act is to secure drainage for the public good, and not to compensate such owners because of delay in carrying out the project. The more reasonable and natural meaning of the language quoted is that the bond is intended to indemnify only such persons who may be damaged as a direct result of the contractor's failure to complete his contract. By a direct result we mean those injuries which arise in the process of construction; for instance, to compensate for injuries to employees occasioned by the negligence of the contractor in carrying on the work, or, as in Eidsvik v. Foley, where lands are overflowed.

For these reasons, the order appealed from is affirmed.