JOHN L. KINNIE v. L. M. BARE, DRAIN COMMISSIONER.

*Drains—Law of 1885—Petition to commissioner—Description of drain—Duty of commissioner—Condemnation.*

| | |
|---|---|
| 68 | 625 |
| 80 | 347 |
| 68 | 625 |
| 89 | 273 |
| 68 | 625 |
| 106 | 360 |
| 68 | 625 |
| 114 | 329 |
| 68 | 625 |
| 117 | 57 |
| 117 | 467 |
| 68 | 625 |
| 119 | 527 |
| 68 | 625 |
| 120 | 562 |
| 68 | 625 |
| 148 | ¹665 |
| 68 | 625 |
| 146 | ¹ 48 |
| 68 | 625 |
| 152 | ¹261 |

1. In construing Act No. 227, Laws of 1885 (drain law), the following points are decided:

   *a*—The petitioners are not required to be *residents*, but only *freeholders*, of the township.

   *b*—The *course* of the drain may be described by its *center* line, on each side of which its width, and land in addition upon which to deposit the excavation, is described in the record of the survey, which description is sufficiently certain.

   *c*—The petition need not contain an accurate description of the *termini* and *route* of the proposed drain, which are to be approximately described for the information of the drain commissioner, who is to ascertain and determine the *practical* route and *termini* by the survey authorized by the act.

   *d*—After receiving the petition, the first duty of the commissioner is to personally examine the route of the proposed drain, and determine whether it is necessary and conducive to the public health that the application should be granted; and, if so, he is to cause a survey to be made, and, if he finds from such survey the drain to be practicable, he is to make his order of determination, in writing, in accordance therewith, and procure a release of the right of way and of damages from all those who are willing voluntarily to give it. Up to this point his proceedings are *ex parte*.

2. Drain laws which take from the citizen his private property against his will, can be upheld *solely* upon the ground that such drains are necessary for the public health.

3. The application for the appointment of commissioners to condemn land for the purposes of a drain, under section 5, chap. 3, of the drain law of 1885, must describe the land of *each* owner proposed to be taken with as much certainty as is necessary in a deed of conveyance of bargain and sale, and should contain such *data* that the *precise* location of each parcel of land may be found by the commissioners, and its area computed.

4. Where commissioners appointed by the judge of probate to condemn land under the drain law of 1885 are found to be interested or otherwise disqualified, the order of appointment may be

68 MICH.—40.

vacated and a new citation issued, the statute not providing for filling such vacancies, but requiring the judge to proceed *de novo.*

Error to Eaton. (Hooker, J.) Argued January 20, 1888. Decided March 2, 1888.

Certiorari to review proceedings establishing a drain. Petitioner brings error from order of circuit court affirming such proceedings. Reversed, and proceedings quashed. The facts are stated in the opinion.

*Huggett & Smith,* for petitioner.

*Shriner & Fox,* for respondent.

CHAMPLIN, J. Proceedings purporting to be instituted under Act No. 227 of the Public Acts of 1885 were taken for the purpose of laying out and establishing a drain in the township of Benton, Eaton county. A petition was presented to the defendant, as drain commissioner of the township, signed by five freeholders of the township, requesting him to locate and establish a drain substantially as follows:

"Commencing at about 84 rods north of the south-east corner of section twenty-three, in said township number three north, of range number four west; thence north-westerly across said section twenty-three, and north-westerly across the north-east quarter of section twenty-two, and ending at the Thornapple river, about 45 rods north of where the said river crosses the section line between sections sixteen and twenty-two."

It is alleged in behalf of plaintiff that this petition is insufficient to confer jurisdiction upon the drain commissioner to act, for the following reasons:

1. That the description is so indefinite as to leave it to him to determine the direction it shall take.

2. That it describes merely a line, instead of the land required for the construction of the drain.

3. That it states neither a starting nor ending point therefor.

4. That it is wholly void in not stating a description of the drain,—the beginning, the route, and the terminus thereof, —as required by law.

5. That it does not show the same to have been signed by five resident freeholders of the township of Benton.

Several changes were made in the act of 1885 from the laws previously in force relative to laying out and establishing drains. The present law is a new enactment, and all other laws inconsistent with it are repealed, saving rights and proceedings commenced thereunder.

Act No. 227 does not require that the petitioners shall be residents of the township; it is sufficient if they are freeholders thereof. The present law also contemplates that the course of the drain may be described by its center line. Chapter 2, § 8; chap. 3, § 3. The width of the drain, and land in addition upon which to deposit the excavation, is described on each side of this center line. Such description, under the law, is sufficiently certain.

It is not contemplated by the provisions of Act No. 227, nor is it longer necessary, that the petition for the drain should contain an accurate description of the *termini* and route of the proposed drain. It could not be well done without the petitioners first went to the expense of a survey, in order to determine the feasibility of the route. This the law does not require. What it contemplates is that the *termini* and route shall be approximately described for the information of the drain commissioner; and it is left for him to ascertain and determine the practical route and *termini*. To accomplish this, he is authorized to employ a surveyor, and it is made his duty to cause an accurate survey to be made, which shall embrace the *termini*, route, width, length, and depth thereof; and it is expressly provided that—

"In locating such drain the commissioner shall not be limited or confined to the precise starting point, route, or terminus set forth in the application." Chapter 3, § 3.

After receiving the petition, his first step is to proceed as soon as practicable, and personally examine the route of the proposed drain, and to determine whether it is necessary and conducive to the public health that the application should be granted; and, if it is, then he shall cause the survey to be made, and, if he finds from such survey the drain to be practicable, he shall then make his order of determination, in writing, in accordance therewith. His next step is to procure a release of the right of way and of damages from all those who are willing voluntarily to give it. Up to this point the proceedings are *ex parte* by the drain commissioner, and without notice to parties interested.

If any owner over whose lands the route of such drain is laid refuses or neglects for 20 days to release the right of way, then the law provides for the commencement of adverse proceedings to condemn the land for such right of way. Such proceedings can be authorized by the Legislature only under the police power of the State.

Drain laws which take from the citizen his private property against his will, can be upheld solely upon the ground that such drains are necessary for the public health. They proceed upon the basis that low, wet, and marshy lands generate malaria, causing sickness and danger to the health and life of the people; that when they are of such character as to injure the health of the community, they become and are public nuisances, which ought to be abated, and the Legislature have the right, under the police power inherent in every government, to protect the people from plague and pestilence, and to preserve the public health. But drainage for the purpose of private advantage, such as improving the quality of the land, or rendering it more productive or fit for cultivation, cannot be justified under the police power. Neither public convenience nor public welfare, independent of considerations of the public health, will justify the Legislature in the enactment of laws—

" For the construction and maintenance of drains, and the assessment of taxes therefor."

It is evident that where the public health is not affected by the existence of low, swampy land, the only object to be accomplished by their drainage is the improvement of the land itself. The State is prohibited from engaging in such schemes of internal improvement by Article 14, § 9, Const., which provides:

"The State shall not be a party to, or interested in, any work of internal improvement, nor engaged in carrying on any such work, except in the expenditure of grants to the State of land or other property." *Ryerson v. Utley*, 16 Mich. 269; *People v. Salem*, 20 Id. 452; *Bay City v. State Treasurer*, 23 Id. 499; *Thomas v. Port Huron*, 27 Id. 320; *Hubbard v. Springwells*, 25 Id. 153; *Benjamin v. Improvement Co.*, 42 Id. 628 (4 N. W. Rep. 483); *Anderson v. Hill*, 54 Id. 477 (20 N. W. Rep. 549).

If private interests are solely involved, no authority exists in the Legislature to tax any person, either to compensate the owner for lands taken, or to pay for constructing the drain. *People v. Salem*, 20 Mich. 452; *Anderson v. Hill*, 54 Id. 477 (20 N. W. Rep. 549).

The Constitution has wisely placed a limitation upon the exercise of the police power for the purpose of taking from the owner his property under the exercise of the right of eminent domain. It is there declared that,—

"When private property is taken for the use or benefit of the public, the necessity for using such property, and the just compensation to be made therefor, * * * shall be ascertained by a jury of twelve freeholders residing in the vicinity of such property, or by not less than three commissioners, appointed by a court of record, as shall be prescribed by law." Article 18, § 2.

Consequently, when proceedings are instituted to establish a drain, if private property is to be taken therefor, it cannot be done until the commissioners appointed by a court of record, or the jury, if one is demanded, has, under the sanc-

tion of their oath, found that it is necessary to the public health that such drain should be constructed as described in the determination of the drain commissioner. This safeguard, if honestly observed by those in whom the trust is reposed, will be sufficient to protect the individual owner and the community to be taxed from perverting the law to merely private purposes. As was said in *Kroop v. Forman*, 31 Mich. 144,—

"In carrying out laws for condemning private property to public uses, it has always been held necessary to strictly observe every material requirement, and the courts have been equally constant in insisting that the proceedings should affirmatively show upon their face a substantial adherence to the course prescribed by the Legislature."

In the application in this case of the drain commissioner to the judge of probate for the appointment of three commissioners, the only description of the land of the plaintiff required to be taken is as follows:

"And your petitioner further shows unto the court that the following named person has neglected and refused to execute release of right of way and damages over and across the lands traversed by said drain, and owned by him, and placed opposite his name, viz., the south-west quarter of the south-west quarter of section fifteen, and the west half of the north-east quarter of section twenty-two, both in town three north, of range four west, said county, and owned by John L. Kinnie, a resident of said township."

The statute (chapter 3, § 5, subd. 3) requires that the application shall set forth the names of the persons, if known, who have not released the right of way and damages, the description or descriptions of land owned by each such person that will be affected by the drain, and the fact that they have each neglected or refused to execute release of right of way and damages. The plain meaning of the statute is that each parcel belonging to separate owners shall contain a description of the land proposed to be taken for the drain with as much certainty and particularity as is necessary in a deed of

conveyance of bargain and sale. It should contain such *data* that its precise location may be found by the commissioners or jury, and its area computed. This was held as long ago as *Kroop v. Forman*, 31 .Mich. 144, where the description consisted of a line merely, and embraced nothing; and it was held a fatal defect. The present law does not aid the description in this respect, as the description contains no *data* showing at what point the center line crosses the boundaries of the land owned by plaintiff, nor its length upon his land. This defect was fatal, and the application conferred no jurisdiction upon the probate court.

The affidavit for *certiorari* sets forth that, on the day assigned for the hearing of the application of the drain commissioner for the appointment of commissioners, the judge of probate appointed as such commissioners George N. Potter, C. N. Streeter, and J. B. Hartwell, to meet on August 19, 1887; that, subsequent to the day appointing them, the names of George N. Potter and J. B. Hartwell were erased without notice to the plaintiff, and the names of Alva P. Claflin and George Hough were substituted therefor.

The drain commissioner, in his return to the writ of *certiorari*, anwsering this allegation, says:

"The court, having announced his order granting the application for the appointment of three special commissioners, in my absence filled out a blank order furnished him by me, therein inserting the names of George N. Potter, Cyrus N. Streeter, and Jerome B. Hartwell as suitable persons for such commissioners, but left the matter open until he had consulted me in relation thereto. In a short time I again saw the court, and then informed him that George N. Potter and Jerome B. Hartwell were the owners of lands liable to be assessed for the construction of said drain, and that George N. Potter owned lands traversed thereby, and that each were thus interested parties.

" That the court thereupon, and before such order became of record in the book of orders and decrees, appointed the following-named persons, viz., Richard Claflin, Cyrus N. Streeter, and George Hough.

"That Richard Claflin and Alva P. Claflin are one and the same person,—the correct name being Alva P. Claflin, but the name by which he is generally known is Richard, or Dick, Claflin, that the person who acted as such commissioner,—the Alva P. Claflin named in the notice served upon the said John L. Kinnie,—was the person intended by the said court to act therein; that no announcement of the names of the commissioners, or the time and place of their meeting, was made when the said John L. Kinnie was present, and for that reason the court caused to be added to such order that such notice be served upon him, the said Kinnie."

There is something singular in this proceeding. The citation issued by the probate judge was required by the law to be served upon every person whose lands were traversed, and who had not released the right of way, and upon every person who will be liable to be assessed for benefits in the construction thereof who is a resident of the town. Proof of service must be filed before the judge can appoint. It seems strange that, if J. B. Hartwell's name appeared as one served with notice, the judge should not have known it.

This instance discloses an obvious incongruity in the law. To every legal assessment there must be an assessing district, and this must be known and designated before the assessment can be apportioned and the burthen imposed. It cannot be left in the discretion of the assessing officer to enlarge or contract at his will,—to include within it, or exclude from it, lands, in his discretion, at the time he lays the burthen. This law nowhere provides for an assessing district, but leaves it to the drain commissioner to make out an assessment of benefits, covering lands in his discretion, without spreading them upon any specified district. He determines who and what lands shall be assessed for benefit; but the law does not specify when he shall so determine. He alone knows whom he is liable to assess. The law requires the citation to be served upon all such; but he is not required to make the assessment until the right of way is obtained, but before the letting of contracts to construct the drain.

The law expressly.declares that—

"All assessments of benefits under the provision of this act shall be upon the principle of benefits derived."

The drain commissioner cannot, therefore, assess a parcel of land more than the benefits it derives from the construction of the drain. How can he determine this question before he has ascertained the entire cost and expense? He must know the entire sum to be assessed before he can intelligently or honestly apportion the per cent. which each is benefited and should pay of such sum.

If it were a conceded fact in each case that the benefits derived would exceed the entire cost and expense of the drain, then, possibly it might be assessed by a percentage, whether the cost and expense would be much or little. The true test to be applied when assessing for benefits is, how much more is the parcel assessed worth in the market after the improvement is made than it was before? The difference is the benefit derived. The drain may benefit the parcel assessed by taking off the water and rendering it more fit for agricultural purposes. Land that can be cultivated and cropped is better and more salable than wet, swampy, and sour land. It has a real substantial difference in value in the market. This difference is the benefit derived from the construction of the drain. One man's land may be improved in value by the construction of the drain, and his neighbor's may not be enhanced in value one dollar. One is subject to be assessed for benefits, and the other is not. It is difficult to see how an assessment for benefits derived can be laid according to a percentage.

This digression has led me away from the point under consideration, but before resuming I wish to say that I express no opinion upon the validity of the law authorizing assessments for benefits in the construction of drains, as the question was not argued in this case.

The statute requires the appointment of commissioners to be made upon citation. This is for the purpose of affording opportunity for those interested to make such objections to the prior proceedings as they see fit, as well as to object for cause to the selection made by the judge of probate. The commissioners must be disinterested men; and if it should turn out, after the appointment was made, that one or more were interested or otherwise disqualified, the judge of probate would undoubtedly have authority to vacate the order appointing them, and issue a new citation for the purpose of appointing three qualified commissioners. The statute does not provide for filling vacancies in emergencies such as this. The result is, the judge, if he has acquired jurisdiction, must begin *de novo.* Parties interested have a right to be present and be heard; and, if this can be evaded by appointing in the first instance disqualified persons, and, after the order is made and the parties departed, make an entirely or partially different appointment, the provision for citation and hearing is useless.

There are facts set up in the return which imply that Mr. Streeter was not entirely disinterested. It appears that, at the request of Mason Lett, the drain commissioner took a blank form of the petition for the drain in this case to Mr. Cyrus N. Streeter, and that he drew the application. He had thus taken an active part in starting the proceedings. In drawing the application he made the mistake of locating the northern terminus—

"At the Thornapple river, about 45 rods north of where the said river crosses the section line between sections *sixteen* and twenty-two."

There is no line between these sections; they corner upon each other. The Thornapple river crosses the line between sections fifteen and twenty-two. The word "sixteen," where it should have been "fifteen," is plainly an error, and was discovered on the day the commissioners were appointed by

the probate court after Mr. Kinnie had left, and the papers were corrected and amended in his absence.

I think the error was merely clerical, and the application would have been sufficient without the correction. The location of the Thornapple river, with regard to section twenty-two, forms a known boundary or monument, and the drain was described as running north-westerly across the north-east quarter of section twenty-two, and ending about forty-five rods north of where the river crosses the section line of twenty-two. The word "sixteen," being impossible of application, may be stricken out.

For reasons stated the proceedings must be quashed.

The other Justices concurred.