SMITH et al., Appellants, v. PENCE & PIER, Respondents.

(146 N. W. 709.)

1. **Appeal—Joint Plaintiffs—Questioned First on Appeal.**

An objection involving right of parties to sue jointly, will not be considered when first raised on appeal.

2. **Error—Briefs—Statement of Fact—Evidence Not in Record— Court Rule.**

Where appellant's brief not only does not show, as required by Supreme Court rule No. 6 (140 N. W. viii) and Laws 1913, Ch. 172, that the statement of facts contains a statement of all material evidence received at the trial, but affirmatively shows that it does not contain all of such evidence, the Supreme Court will not consider questions, the decision of which depends upon sufficiency of evidence to sustain findings.

3. **Appeal—Harmless Error—Irregular Ditch Bond—Substantial Rights—Statute.**

Where, in a suit to enjoin completion of a drainage ditch, it appears that the sureties in the bond accompanying the drainage petition were petitioners, and are also parties plaintiff in the suit, held, that such irregularities in the bond do not

affect the substantial rights of the parties, under Laws 1907, Ch. 134, Sec. 30, and will be disregarded.

4. **Drains—Validity of Proceedings—Defective Bond—Objections, When Available.**

When a drainage ditch has been established without any appeal in the proceedings, or when established after appeal taken, the purpose of the ditch bond has ceased, and defects in the bond are unavailing as grounds for questioning validity of drainage proceedings.

5. **Same—Sufficiency of Description of Route—Initial Point.**

A description of a drainage ditch in a petition, that the ditch was to be constructed "substantially in the following place * * : Commencing at the north line of the N. W. ¼ of section 30-107-62, thence running a south and easterly course through the said N. W. ¼ of section 30," and certain other quarter sections, and terminating in the drainage ditch now in opera-tion on the S. E. ¼ of section 34-107-62, Sanborn county, S. D., **held**, sufficient, under Laws 1907, Ch. 134, Sec. 2, re-quiring such petition to contain a description of proposed route by its initial and terminal points, and by its general course, or by its exact course in whole or in part; it not appearing that the initial point chosen on the north line of said section 30 would affect the project as a whole, alter the expense, or place upon the land owners further down stream a greater burden than if any other point thereon were chosen.

6. **Sufficiency of Description of Route—Estoppel of Petitioners to Deny.**

Petitioners for a drain who had knowledge of all proceedings for its construction, and of the progress thereof, will not be heard to object, at any stage of the proceedings, to the suf-ficiency of the petition in describing the ditch route.

7. **Same—Who May Object—Prejudice.**

No one, not prejudiced by uncertainty in description of pro-posed route of a drainage ditch, or who had full knowledge and notice of all proceedings in the establishment and con-struction thereof, and of the progress being made therein, even if prejudiced thereby, will be heard to question sufficiency of petition in that respect.

8. **Drains—Validity of Proceedings—Collateral Attack—Appeal.**

Where the right of appeal lays, under Laws 1909, Ch. 102, Sec. 9, from practically every determination of county board in drainage ditch proceedings, parties who do not appeal cannot question validity of the assessments in a suit to enjoin completion of drain and the spreading of an assessment.

9. **Estoppel—Estoppel in Pais—No Pleading—Evidence Without Ob-jection—Waiver.**

Though an equitable estoppel in pais is not pleaded, yet if evidence thereon is introduced without objection, and a verdict is rendered, without objection, the objection of failure to properly plead the estoppel is waived.

10. Estoppel—Failure to Plead—Finding on Estoppel—Sufficiency of Evidence—Presumption—Record.

Where, in a suit to enjoin completion of a drainage ditch and the spreading of an assessment, trial court found that plaintiffs were estopped from objecting to the proceeding, though estoppel was not pleaded, the Supreme Court, in absense of a statement of facts containing all the evidence, and of a plea of estoppel, will presume that the evidence justifying findings of fact was admitted without objection.

(Opinion filed April 13, 1914.)

Appeal from Circuit Court, Sanborn County. Hon. FRANK B. SMITH, Judge.

Action by C. W. Smith and others against Pence & Pier and others, to enjoin the completion of a drainage ditch and the spreading of assessments therefor. From a judgment for defendants, and from and order denying a new trial, plaintiffs appeal. Affirmed.

*C. B. Kennedy,* and *A. R. Brown,* for Appellants.

The statute requires sureties. Section 2, Chapter 134 of the Laws of 1907.

This bond is a jurisdictional requirement. Casey, et al., v. Burt Co., 81 N. W. (Neb.) 851.

The kind of a ditch to be established is entirely a matter for the commissioners. This bond takes it away and limits the action of the commissioners to the ditch described in the petition. Board of Education v. Sweeney, 48 N. W. 302 (S. D.)

The initial and terminal points were not definitely stated in the petition.

In all these descriptions of land the only direction given is "south and easterly," and following any south and easterly direction that may be selected, all of the descriptions stated in the petition could not be touched. Lewis v. St. Paul, M. & M. R. R. Co. (S. D.); Mathas v. Drain. Com's., 13 N. W. 818; Lewis v. R. R. Co. 58 N. W.; Johnson v. Johnson County, 119 N. W. 502 (Minn.); Sonnek v. City of Minnesota Lake, 50 Minn. 558; 58 N. W. 961; Sonnek v. Town of Minnesota Lake, 52 N. W. 961 (Minn.); 105 N. W. 186, State v. Lindig; Null

v. Zierle, 18 N. W. 348; Railway Co. v. Hooper, 76 Cal. 404, 413, 18 Pac. 603.

If the commissioners lose jurisdiction by the failure to perform any necessary step, their proceeding and determination are wholly void and may be attacked collaterally or directly. Ruhland v. Jones, 55 Wis. 673, 13 N. W. 689; McKee v. Hull, 69 Wis, 657, 35 N. W. 49; Schroeder v. Klipp, 120 Wis. 245, 97 N. W. 909; Ward v. Peck, 49 H. J. L. 42, 6 St. 905;Section 1244, Subd. 4, Code Civ. Pro.; Secs. 1 and 4, 5, Chap. 102, Laws 99; Ruhland, et al., v. Supervisors of Hazel Green, 13 Wis. 877.

Equitable estoppel or estoppel in pais, to be available as a defense, must be plead. At common law the plea of estoppel was required to have a formal commencement and conclusion, to mark its special character; and in its conclusion such a plea, to be efficacious, must rely upon the estoppel. East St. Louis v. Flanigen, 34 Ill. App. 596; Whitmore v. Stevens, 48 Mich. 573; 12 N. W. 858 and 60; 2 Chitty Pledgs. (16 Am. Ed. 381; Parliman v. Young, et al., 2 Dak. 185; McKeen v. Naughton, 88 Cal. 462; Jackson v. Lynn, (Iowa) 62 N. W. 704-705.

*Spangler & Haney,* and *John E. Whiting,* for Respondents.

The plaintiffs in this action, or most of them at least, are the original petitioners for the establishment and construction of said ditch, and have had full notice and knowledge of all the proceedings had and have been present at the meetings of the commissioners and a number of them have filed their written consent and waiver to all objections as to the proceedings and assessments had in this matter and have taken no advantage of the statutory provisions for an appeal from any order of the County Commissioners with which they might be dissatisfied, but have stood by and seen the work go on, the expense incurred and the ditch completed.

The ditch described is already completed; and it is too late for a Court of equity to enjoin the construction thereof, and a Court of equity will not attempt to prevent a thing that is already done. Frost v. Flick, 1 Dakota, 131; Bank v. Black Hills Fair Association 2nd S. D. 145; Railway Co. v. Dickey County, 90 N. W. 260; Avant v. Flynn, 2nd S. D. 153.

A bond is required under many statutes where it is not jurisdictional. This bond is signed by three sureties. Eckman v. Hammon, (Neb.) 43 N. W. page 397.

There is no requirement in our statute for any principal to execute such bond. Seng v. Payne and others, 128 N. W. 625.

There is nothing in the statute to prohibit petitioners from becoming sureties.

The description given in the petition in this case was considered as sufficient by all parties interested therein, including the plaintiffs. who were themselves the petitioners, and the same was acted upon without objection, and later the Board determined the exact line of the ditch and the width and depth of the same, which line was surveyed and staked out by a competent surveyor and the ditch constructed, and after the completion of such ditch this objection is made for the first time.

Even if the petition was subject to such objection in the first instance, it comes too late now. County drains v. Long, 130 N. W. 153; Cook and others v. Covert Township (Mich.) 39th N. W. 47; Wilson v. Woolman, County Drain Commissioner, (Mich.) 94, N. W. 1076; Erickson v. Cass County, (N. D.) 92, N. W. 841.

While the plaintiffs were not all petitioners for the construction of this ditch, the work is of such a character that they are all charged with notice of the fact that it was being done, and in this action they have all joined, whether petitioners or not in the first instance.

Where an equitable estoppel in pais is not properly pleaded, and evidence is introduced without objection, in the same manner as if it had been properly pleaded, and a verdict is rendered upon the evidence, without objection, the objection to the pleading will be deemed waived, and the case will be considered as though the estoppel had been properly pleaded. Parliman v. Young, 2 Dak. 175; Davis v. Davis, 26 Cal. 38; Davis v. Davis, 23 Cal. 354.

GATES, J. This is a joint action by twenty-eight individuals and two civil townships seeking an injunction against the completion of a then nearly completed drainage ditch and against the spreading of an assessment, theretofore made, upon the books

of the county treasurer, to raise funds to pay for the same.
The contractors and their surety, the members of the board of
county commissioners, the county auditor and the county treas-
urer were made parties defendant.

[1] Upon appeal, for the first time, the right of the plaintiffs
to maintain the action jointly was challenged  This objection came
too late and we cannot now consider it.   Merrill v. Minn. & St.
L. R. Co., 27 S. D. 1, 129 N. W. 468.

Separate answers to the complaint were made by the con-
tractors and by the county officials.   Trial was had by the court
and findings of fact and conclusions of law were rendered favor-
able to the defendants.   Judgment was entered dismissing the
action.   From the judgment and order denying a new trial
plaintiffs appeal.

The material portions of the findings of fact made by the
trial court are as follows:

"2. That each of the plaintiffs own land which has been
assessed by the board of county commissioners of Sanborn county,
South Dakota, for the construction of a drainage ditch in said
county known and designated as drainage ditch No. 21, and that
each and all of the plaintiffs are interested in the relief demanded
in the complaint in this action.

"7. That on the 19th day of July, 1909, a petition was pre-
sented to said board of county commissioners of Sanborn county,
South Dakota, in writing, praying for the establishment of a
drainage ditch under the statute in such cases made and pro-
vided; that said petition was accompanied by an undertaking con-
ditioned that the sureties executing said undertaking would pay
all costs and expenses in case the drainage ditch petitioned for
was not established or the same should be dismissed on appeal;
that said undertaking was duly filed with the county auditor, and
the sureties thereon duly approved by said auditor; that said bond
was signed by C. W. Smith, E. M. Smith, and Ed. M. Newcomb
as sureties.   That it was written immediately following the petition
and was a part of and accompanied said petition, which bond was
in the following form:  'In the Matter of the Establishment of
Drainage Ditch Described in Petition.   State of South Dakota.
County of Sanborn, ss.   Whereas, the foregoing petition asking
the board of county commissioners of Sanborn county, South Da-

kota to establish or construct a ditch or drain as therein specified is to be presented to said board for its action thereon, Now, therefore, we, the undersigned do hereby jointly and severally undertake, promise and agree with the said county of Sanborn, that we will pay all expenses incurred in case said board of county commissioners do not grant the said petition or the same is denied on appeal. Dated this ————— day of July, 1909. (Signed) C. W. Smith, E. M. Smith, Ed. M. Newcomb. I hereby approve of the above sureties on the above bond. Dated this ————— day of July, 1909. (Signed) Louis Strand, County Auditor.'

"8. That the sureties on said bond and each of them were signers of the original petition for the construction of said ditch, and are also plaintiffs in this action; and that said undertaking is the only undertaking which accompanied said petition or which was filed in this matter; and that the foregoing approval of the county auditor was written upon the foot of said undertaking.

"9. That upon the filing of said petition and undertaking with the board of county commissioners of said Sanborn county, said board, on the 20th day of July, 1909, took the following action thereon: 'Be it Resolved, That D. H. Brewster, surveyor, be directed to make a preliminary survey of the land affected by said proposed drainage ditch and report to this board; and that the report of the surveyor be filed with the petition for the above described ditch; and that a hearing be had on said petition at the court house in the City of Woonsocket, South Dakota, on the 9th day of August, 1909, at 7:30 o'clock p. m., at which time and place any person interested in said proposed ditch may appear before the board in reference thereto and that notice of the time and place of hearing said petition be given by publishing notice thereof in the Woonsocket Times, a weekly newspaper published in said county, for two consecutive issues thereof, and by posting notices thereof in the manner and form required by law.'

"10. That notice of the hearing of said petition was duly given and published in said Woonsocket Times as directed by said board of county commissioners; and that such notice was duly posted, as in such cases provided by statute, in three public places in said county two weeks prior to said day of hearing; and

that said notice in form and substance substantially complied with the statute in such cases made and provided.

"11. That on the said 9th day of August, 1909, the said board of county commissioners of Sanborn county met at the time and place fixed in the said notice and the following proceedings were had: 'It being 7:30 the time set for the establishment of what is known as the Smith Ditch, the board went into ditch session to hear the complaint, and after those opposed and favoring the establishment of the above named drainage district were duly heard, the following resolution was approved: 'Whereas, the petition of C. W. Smith et al., praying for the establishment of a certain drainage district commencing at the north line of the northwest quarter of section 30-107-62, has been submitted to this board, and Whereas, the state engineer has waived his right to inspect said route, and Whereas, D. H. Brewster has, pursuant to the order of this board, made a preliminary survey thereof and found the same feasible, and Whereas, pursuant to notice duly given according to law, those opposed to the establishment of said drainage district and those favoring the same was fully heard in relation thereto in the court house at Woonsocket, South Dakota, at 7:30 p. m., August 9, 1909, and Whereas, those appearing and asking damages by reason of said drainage ditch were fully heard, and Whereas, this board has reviewed said proposed route and deemed said proposed drainage, with such minor variations of the line as may be determined by a final survey, conducive to the public health, convenience and welfare and practical for draining agriculture lands, now therefore, Be it Resolved, That said drainage district proposed, be and the same is hereby established; that said drainage district be known as Drainage Ditch Number 21 and the auditor be and he is hereby directed to index and keep a record of the proceedings thereof in the drainage records of this county. That said drainage district be established in accordance with the recommendation of the engineer, D. H. Brewster, and a dredge ditch from Station 40, and the same to be made with a three-foot bottom and a one by one slope from Station 0 to Station 40, said ditch to be a capstan ditch three feet deep and eight feet wide on top.

"12. That at said hearing on the 9th day of August, 1909, the width and depth of said ditch were determined by the said board

of county commissioners, and also the location was determined, including the commencing and terminal points.

"13. That the plaintiff, C. B. Kennedy, was not a petitioner for the said ditch, but that a number of the plaintiffs were petitioners; and that all of the plaintiffs, at all times, had full knowledge and notice of all proceedings had in the establishment and construction of said ditch, and the progress being made in the construction thereof.

"14. That after the establishment of said drainage ditch and the fixing of the damages, the board of county commissioners of Sanborn county, appointed the time and place for fixing the proportion of benefits of the said proposed drainage ditch among the lands affected by said ditch, and that the time fixed for such hearing was the 16th day of January, 1910, and that due notice of the time and place of fixing the proportion of benefits to the lands affected by said ditch was duly given by publishing notice thereof for two consecutive weeks in a weekly newspaper in said Sanborn county, designated by said board of commissioners and by posting such notice in three public places along the line of said ditch two weeks prior to said day of hearing; and that such notice in form and substance substantially conformed to the statute in such case made and provided, and referred to the assessments on file and in the office of the county auditor of said Sanborn county for further particulars.

"15. That thereafter and on or about the 10th day of December, 1909, the said county commissioners of Sanborn county made and entered into a contract with the defendants, C. A. Pence and F. C. Pier, co-partners as Pence & Pier, for the construction of said drainage ditch so established by said county commissioners; and that in pursuance of said contract the said Pence & Pier entered upon the construction of said drainage ditch and proceeded and continued to dig and construct the same; and that at the time this action was commenced said ditch was practically completed.

"16. That during all the time said ditch was being constructed each and all of the plaintiffs had notice and knowledge that the same was being done; and that the expense of constructing said drainage ditch was being incurred, but took no steps to

prevent the same; and that the same was nearly completed when this action was commenced.

"17. That the purpose of this action is not to enjoin the construction of said ditch, but simply to restrain the defendants from completing the same and to restrain the auditor and treasurer of said Sanborn county from spreading the assessments for the construction of said drainage ditch upon the tax books and from collecting the same, and to have all proceedings relative to the establishment and construction of said ditch declared null and void, and to enjoin the officers of said county from collecting the assessments made for the construction thereof.

"18. That the said Pence & Pier constructed said drainage ditch substantially according to the terms of and as specified in their contract with said board of county commissioners of said Sanborn county, South Dakota, and had the same practically completed and practically all the expense had been incurred at the time this action was commenced."

The questions argued by appellants are:  (1) Indefinite description of route in petition.  (2) No sureties on bond.  (3) Exact line of ditch never determined.  (4) Partial change from plow ditch to dredge ditch and width of right of way increased. (5) Insufficient fall; ditch a nuisance.  (6) Estoppel.  (7) Protest.  All questions raised, except the sufficiency of the description of the route of the proposed ditch in the petition, and the sufficiency of the bond accompanying the petition and the question of estoppel, necessarily challenge the sufficiency of the evidence to sustain the findings.

[2] There is no assertion in appellant's brief in accordance with rule 6 of this court (140 N. W. viii) and Chap. 172 Laws 1913, that the statement of facts contains a statement of all of the material evidence received upon the trial, hence we may only consider the three questions hereinafter discussed. Thomas v. Fullerton, 13 S. D. 199, 83 N. W. 45; State v. Allen, 21 S. D. 121, 110 N. W. 92. Not only is this necessary statement absent from the record, but the record affirmatively shows that it does not contain all of the material evidence.  Furthermore, many of the exhibits offered in evidence are not contained in the printed record; notably the vitally important notice of hearing upon the petition for the establishment of the ditch.  Many of the so-called exhibits contained in the

printed record do not even purport to have ever been offered in evidence. ·

[3] We have given careful consideration to the bond accompanying the drainage petition and after considering the authorities herein cited and the provisions of the drainage statute, we are of the opinion that the alleged defects or irregularities in the bond or undertaking, do not affect the substantial rights of the parties and that therefore, under section 30, chapter 134, Laws 1907, the same should be disregarded.

In Lee v. Clark Imp. Co., 31 S. D. 581, 141 N. W. 986, the drainage bond was signed by one as principal who was not a petitioner and by one as surety who was a petitioner. While the question as to the sufficiency of the bond was not discussed in the opinion, it was held that the land owners were estopped from asserting that and other alleged irregularities.

The purpose of the bond or undertaking is to indemnify the county, and perhaps other interested persons, against loss or expense in case the petition is denied, either by the county board or upon appeal.

[4] When the ditch has been established by the board and no appeal has been taken within the time precribed by law; or when an appeal has been taken and the ditch is established upon appeal, the purpose of the bond or undertaking has ceased. After that time all questions in regard to the bond are unimportant and cannot be made grounds for questioning the validity of the drainage proceedings. Freeborn Co. v. Helle, 105 Minn. 92, 117 N. W. 153; Gugisberg v. Eckert, 101 Minn. 161, 111 N. W. 945; Re Drainage Dist. No. 3, Hardin Co., 146 Iowa, 564, 123 N. W. 1059; Sample v. Carroll, 132 Ind. 496, 32 N. E. 220; Seng v. Payne, 87 Neb. 812, 128 N. W. 625.

[5] Appellants challenge the sufficiency of the description of the route of the proposed drainage ditch as set forth in the petition. They claim that such description was not in conformity with the requirements of the statute and therefore that the whole drainage proceeding was void. The statute, section 2 chapter 134, Laws 1907, requires the petition to set forth: "A description of the proposed route by its initial and terminal points and its general course, or by its exact course in whole or part."

The petition set forth the route as follows: ''That the said drainage ditch be constructed and maintained substantially in the following place in said county, to-wit:   Commencing at the north line of the N. W. ¼ of Sec. 30-107-62, thence running a south and easterly course through the said N. W ¼ of Sec. 30; S. E. ¼ 30; S. W. ¼ 29; N. W. ¼ 32; S. W. ¼ 32; N. W. ¼ 5-106-62; N. E. ¼, 5-106-62; S. E. ¼, 32-107-62; S. W. ¼, 33-107-62; N. W. ¼, 4-106-62; N. E. ¼, 4-106-62; N. W. ¼, 3-106-62; S. W. ¼, 34-107-62, and ending and terminating in the drainage ditch now in operation on the S. E. ¼ of Sec. 34-107-62, Sanborn county, S. D.''

In Wright v. Wilson, 95 Ind. 408, the statute required the petition for drainage to give the "general description of the proposed starting point, route and terminus." The description of the route after the initial point was nearly as general as in the present case, although the initial point was more definitely given. The description was as follows:   "Beginning at a point indicated by a stake on the east side of the C. C. & I. C. railroad, and bearing east about twenty-seven rods from the southwest corner of the northwest quarter of the northeast quarter of section number eight, township twenty-five north, of range three east; thence northwest parallel to the line of said railroad through the northwest quarter of the northwest quarter of said section eight; thence through the northeast part of the northeast quarter of section seven, same township and range, being the land owned by your petitioner; thence through the northeast part of the southeast quarter of section number six, owned by Isaac Benngame, to the intersection of the old channel at the north side of a pond, thence northwest with curves in channel to west side of the culvert under said railroad to the point of outlet, bearing southeast from the northwest corner of the southeast quarter of said section number six, same township and range as aforesaid, where the same terminates at said culvert." The court said:   "This description is quite general, especially that portion describing the route, but as the statute does not require an accurate description we think this sufficient in this respect." This case was decided on direct appeal from the order establishing the ditch.

In Metty v. Marsh, 124 Ind. 18, 23 N. E. 702, the route of the ditch was described in the petition as follows: "Commencing at a

point about the center of the east half of the southeast quarter of section seventeen (17), in township twenty-five (25) north, range twelve (12) east, thence in a northeasterly direction to a point about twenty (20) rods west of the southeast corner of the northeast quarter of said southeast quarter; thence north about forty (40) rods; thence a little north of west until it intersects the Rockcreek ditch, said proposed ditch to follow the natural channel for water the entire distance." The court said: "The statute does not require a particular description of the location of the proposed ditch or drain. The statute requires that the petition shall contain a general description of the proposed starting point, route and terminus of the ditch. The original petition before us contains such description; indeed, in view of the duties to be performed by the viewers, the description in the petition could not be otherwise than general, for it is the duty of the viewers to locate the ditch or drain upon such line as they may deem best to accomplish the object sought, varying from the line described in the petition to such a degree as may be necessary to locate the ditch at a place where it will, in their judgment, accomplish the most good." This was likewise on direct appeal.

In People v. Munroe, 227 Ill. 604, 81 N. E. 704, the statute made a similar requirement as to the description of the route but provided: "that in case the proposed work shall consist of a combined system of drainage, * * * no description of such drains and ditches * * * shall be required."

It was contended that in the absence of a description of the route the petition should have averred "that there was work theretofore constructed with which the proposed work was to be combined." The court said: "The question whether a similar defect would deprive the court of jurisdiction was determined in People ex rel. v. Lingle, 165 Ill. 65, 46 N. E. 10. At the time that case arose the statute in reference to local improvements within a city provided that when such an improvement was to be made, wholly or in part, by special assessment, the city council should pass an ordinance to that effect, 'specifying therein the nature, character, locality and description of such improvement,' (Hurd's Stat. 1895, Chap. 24, Sec. 134), and that the petition filed in the county court should 'recite the ordinance for the proposed improvement.' (Sec. 137, Chap. 24, supra.) It was objected in the case just re-

ferred to, on an application for judgment and order for sale for delinquent special assessments, that the ordinance did not contain a sufficient description of the nature, character and locality of the improvement. This court held that this objection was not one which went to the jurisdiction of the court, and for that reason could not be entertained on an application for a judgment and order of sale. We think it follows that the defect last above pointed out in the petition now before us is not one which affected the jurisdiction of the court."

In Drummer Creek Drain. Dist. v. Roth, 244 Ill. 68, 91 N. E. 63, upon a direct appeal from an order establishing a drainage district the boundaries of the drainage district (not the proposed route of the ditch) was described as: "Commencing at the north line of section 10 and extending south, etc., * * * thence west to the place of beginning." It will be seen that the alleged initial point was similar to that in the present case, the court said: "Manifestly, this original petition was indefinite as to the starting point of the district boundary line. It might begin in the north line of section 10 at any distance, however small, east of the west line of said section and extend south to the south line of section 15, directly south of the starting point. The description did not commence at any definite point on the north line of section 10 or touch at any fixed point in the south line of section 15. This would permit such a variation in the point of commencement that the boundary lines could be so drawn as to make approximately a difference of 1280 acres in the district." It is clear that this case has no application to the case at bar. The uncertainty as to the exact location of the initial point can accomplish no such results as above indicated and it must be remembered that the question there arose on appeal from the order establishing the district.

In State ex rel. Utick v. Polk Co. Comrs., 87 Minn. 325, 92 N. W. 216, 60 L. R. A. 161, the court in a carefully prepared opinion discussed many features of the drainage law of that state. Upon the question of the sufficiency of the description of the route in the petition, the court said: "It is further contended that the description of the proposed ditch, as set forth in the petition, is so indefinite and uncertain as to confer no jurisdiction upon the county

commissioners. We do not concur with relators in this contention. The description of the proposed ditch as contained in the petition, is as follows: 'Commencing at a point in the southwest quarter of the southwest quarter (S. W. ¼, S. W. ¼) of section eight (8), on the northerly shore of a certain lake, lying and being in said section eight (8) and section seventeen, town of Queen, Polk county, Minn.; thence running,' etc. The precise objection made to the description is that it is indefinite and uncertain as to the starting point of the proposed ditch. A petition in proper form is, no doubt, a prerequisite to the authority of the commissioners to act, but it is not necessary that the same contain an accurate description of the proposed ditch,—either of its starting point or terminus. It is sufficient if the description contained therein be approximately correct. Kinnie v. Bare, 68 Mich. 625, 36 N. W. 672. The precise location of the ditch is determined by the civil engineer, and is to be found in his report; and that this report definitely located that point and the entire course of the ditch, there is no question. Cribbs v. Benedict, 64 Ark. 555, 44 S. W. 707." In that case the statute, chapter 258, Laws 1901, required the petition to show "a description of the proposed starting point, route and terminus."

In Arkansas the provision as to the description of the route is the same as in Indiana. In Cribbs v. Benedict, 64 Ark. 555, 44 S. W. 707, the description was as follows: "that on Sec. 30, Twp. 4, Range 14 W., there were several lakes or ponds, which are susceptible of being drained into the Arkansas river by a ditch running from about west to east, and through lands belonging to the estate of John W. McCulloch and B. L. Harton, Esq., emptying into the river on the land of George Donaghey." Concerning this description the court said: "The most casual scrutiny of the language of section 1204 will discover that the petition was not designed to make any precise alignment or description of the ditch. It was required to be signed, not by one or more land owners whose land *would be affected,* but only by one or more whose land *would be liable to be affected,* depending upon whether or not the ditch, as finally constructed, was the same as that described in the petition. In other words, allowance is made in the act for the probability that the route settled upon by the viewers may be so different from that described in the petition

as not to affect or benefit the land of the signer or signers of the petition at all. Only a general description of the proposed 'starting point, route and terminus' is demanded in the petition. Now the word 'general' is opposed to *particular*. It means; 'Not specific, vague, indefinite.' Webster's Unabridged Dict. The language indicates that no precise 'starting point, route or terminus' was to be set forth in the petition. * * * The petition in this case sufficiently conformed to the requirements of the statute." Our statute as to who may sign the petition is similar to the Arkansas statute. It provides that the petition may be "signed by one or more owners of lands *likely to be affected* by the proprosed drainage."

In Sustaining a description fully as indefinite between the initial and terminal point as the one in the present case the court said in Kinnie v. Bare, 68 Mich. 625, 36 N. W. 672. It is not contemplated by the provisions of Act No. 227, nor is it longer necessary that the petition for the drain should contain an accurate description of the termini and route of the proposed drain. It could not be well done without the petitioners first went to the expense of a survey, in order to determine the feasibility of the route. This the law does not require. What it contemplates is that the termini and route shall be approximately described for the information of the drain commissioner." Under a statute which required "a general description of the beginning, the route and the terminus," the court in Brady v. Hayward, 114 Mich. 326, 72 N. W. 233, held the following description sufficient: "The drain hereinafter proposed, known and hereby designated as a portion of Black river, is a regular natural watercourse, and the same needs deepening, widening, cleaning out, and straightening from a point in said river where the said river intersects the section line between sections 4 and 5 of T. 11 N., R. 15 E., where said Black river has a well-defined channel, about 80 rods south of northeast corner of section 5 of said T. 11 N., R. 15 E.; thence in a northwesterly direction upstream, following the channel of said river, with a view to straighten through section 5 of T. 11 N., R. 15 E.; through sections 19, 30, 29 and 32 of T. 12 N., R. 15 E.; through sections 1, 12, and 13, of T. 12 N., R. 14 E.; through sections 36, 25, 26, 23, 14, 15, 10. and 3 of T. 13 N., R. 14 E.; and through sections 34, 27, 28, 22 and 21 of T. 14 N.,

R. 14 E., terminating at a point 80 rods south of the N. E. corner of section 21 in T. 4 N., R. 14 E." In Hauser v. Burbank, 117 Mich. 463, 76 N. W. 109, the following description was seld sufficient: "Commencing at a point about 50 rods south of the northeast corner of section 1, Weesaw township, in said county of Berrien, where Hickory creek crosses the highway along the easterly line of said township of Weesaw; thence, in a westerly and northwesterly direction, through said section 1; thence, crossing the southwest corner of section 36, township of Lake, in said county, into section 35, in said township of Lake, at a point about 12 rods north of the southeast corner of said section 35; thence, running in a northerly direction, following the general course of said Hickory creek, to a point where said creek crosses the north line of said township of Lake." See, also, Ranney Refrigerator Co. v. Smith, 157 Mich. 302, 122 N. W. 91

In re Drainage Dist. No. 3, Hardin Co., 146 Iowa, 564, 123 N. W. 1059, the court said: The fact that the petition on which the board acted in this case described the starting point of the contemplated improvement as 'somewhere near' a certain section specifically described was not we think a substantial failure to comply with the statutory requirement that the petition shall set forth the starting point of the proposed ditch, and the reference to lateral branches seems to be contemplated by the statute itself. It would be in the nature of things impracticable to describe the starting point and course of each lateral branch which might be found necessary after the survey by the engineer subsequently to be appointed. We are satisfied that the petition on which the board acted substantially complied with the requirement of the statute and was sufficient to call into action the powers of the board with reference to the establishment of the contemplated district."

The Iowa statute, section 1989, a. 2, requires the petition to show "the starting point, route and terminus and lateral branches, if necessary, of the proposed improvement." It will be noticed that this requirement as well as the Minnesota requirement is more stringent than that contained in our statute. That court further said in this case: "The only purpose of the petition is to bring to the attention of the board of supervisors the alleged desirability of the establishment of a drainage district, the location and boundaries of which are described with sufficient definiteness

to enable the board to determine whether the contemplated improvement is desirable and proper within the statutory description."

In the present case we are satisfied that the general description of the route between the initial and terminal points was clearly sufficient under the above authorities to comply with our statute. We are also of the opinion that the description of the initial point was sufficiently accurate for the present purposes of the case. Wherever the initial point may have been on the north line of the northwest quarter of section 30, the route proceeded thence through the southeast quarter of said section. It therefore must have left the northwest quarter at its southeast corner and entered the southeast quarter of section 30 at its northwest corner. So that the only person whose land was affected by the uncertainty in the initial point, was the plaintiff, E. M. Smith, the owner of the northwest quarter of said section 30. He was one of the petitioners. The engineer's report shows that he recommended a point about 80 rods east of the northwest corner of section 30 as the initial point. It does not appear from the record that the location of the initial point at any particular place on the north line of said quarter section would affect the project as a whole, one way or another. So far as the record shows the point chosen would cause neither more nor less expense than if another point on said north line was chosen. Nor does it appear that the choice of any particular initial point on said north line would place upon the owners of land further down stream any greater burden in any way than if any other point on said line was chosen.

[6] It is clear therefore that the only person affected by such uncertainty in the initial point was the plaintiff, E. M. Smith, a petitioner. Neither he nor any petitioner ought to be heard at any stage of the proceedings to question the sufficiency of the petition in that respect.

[7] Nor should any other person be heard to question the sufficiency of the petition in that respect at any stage of the proceeding, unless he showed that such uncertainty was prejudicial to him. Nor should any of the plaintiffs now be heard in this action to question the sufficiency of the petition in that respect, even if prejudiced thereby, because of finding of fact number 13, supra. The same considerations which we have

asserted in regard to the sufficiency of the description of the initial point for the present purposes of this case apply to the terminal point. The petition described the ditch as "terminating in the drainage ditch now in operation on the S. E. ¼ of Sec. 34-107-62, Sanborn county." Whether the terminal point be in one place or another upon the former ditch within that quarter section was, so far as the evidence shows, solely a question in which the owners of that quarter section are concerned. The owners of that quarter section, it is true, were not petitioners but this fact in our opinion, makes no difference now.

We are of the opinion that the description of the route in the present case while quite inartistic and extremely. general, was a sufficient description to vest jurisdiction in the county board to proceed in the matter. The defects in the description did not go to the jurisdiction of the board to entertain the proceeding. Not being jurisdictional such defects were waived by the subsequent course taken by the appellants. While they served a notice of protest upon the contractor, it does not appear that this protest ever reached the board of county commissioners. If it had, the appellants could not have relied upon that alone.

[8] The right of appeal lay from practically every determination of the county board in regard to this ditch. Sec. 9, chapter 102, Laws 1909. In re Sorenson, 27 S. D. 342, 131 N. W. 300. The appellants exercised none of their statutory rights of appeal from the determinations of the county board. By failing so to do they must be held to be estopped from questioning in this action, the validity of the assessments. In Wilson v. Woolman, 133 Mich. 350, 94 N. W. 1076, the court said: "The decree is right for two reasons: (1) Because the complainant knew of the proceedings as they were going on, and took none of the steps provided by the statute for a speedy determination of the question of their validity. Auditor Gen. v. Melze, 124 Mich. 285 (82 N. W. 886). (2) Complainant cannot be heard in a court of equity after the drain has been completed. He cannot stand by, see the work go on to completion, and then file a bill in equity to test the validity of the proceedings. Township of Walker v. Thomas, 123 Mich. 290, 82 N. W. 48."

In the case In re Morrison County, (Minn.) 139 N. W. 286. the situation was quite similar to the present one. There the

land owner appeared in the proceeding after the assessment was made and set up the alleged invalidity of the drainage proceedings. Here the plaintiffs without ever appealing from any order made by the county board, began an action to avoid the assessment long after it was made and at a time when the ditch was nearly completed. In that case the court said: "It is well settled by our decisions that the validity of drainage proceedings, commenced and concluded under the drainage statutes, cannot be called in question in a collateral action by any person who was a party to and who took part in the proceedings; that as to such persons the order establishing the ditch is final and conclusive, unless the validity thereof be brought in question by some direct proceeding." This same doctrine has been promulgated by this court in De Noma v. Murphy, 28 S. D. 372; 133 N. W. 703; Lee v. Clark Implement Co., 31 S. D., 581, 141 N. W. 986; and Hoisington v. Price, 32 S. D. 486; 143 N. W. 776. See, also, Erickson v. Cass Co., 11 N. D. 494, 92 N. W. 841.

It seems to us that the alleged defects in the petition as to the sufficiency of the description of the route and initial and terminal points of the ditch likewise do not affect the substantial rights of the parties and that therefore the same should be disregarded because of the provisions of section 30, chapter 134, Laws 1907.

[9] But it is urged by appellants that the defendants did not plead estoppel and hence cannot avail themselves of it. In Parliman v. Young, 2 Dak. 175, 4 N. W. 139, 711, the court said: "But where an equitable estoppel *in pais* is not properly pleaded, and evidence is introduced without objection, in the same manner as if it had been properly pleaded, and a verdict is rendered upon the evidence, without objection, which is this case, the objection to the pleading will be deemed waived, and the case will be considered as though the estoppel had been properly pleaded. (Davis v. Davis, 26 Cal. 23, [85 Amer. Dec. 157.]"

[10] Inasmuch as the trial court has found that the appellants are estopped from asserting their objection to the drainage proceeding, this court, in the absence of a showing that the statement of facts set out in appellant's brief contains all of the material evidence in the case, and in the absence of a plea of estoppel by defendants, is bound to conclude that evidence was ad-

mitted without objection tending to justify that finding of fact.

Finding no prejudicial error in the record, the judgment and order denying a new trial are affirmed.